No. 28.—Ansel Watkins, plaintiff in error *vs.* S. & J. Wool-
folk, defendants.

[1.] Where a plaintiff in Ejectment had been in possession of land, for the peri-
od prescribed by the Statute of Limitations, holding adversely under color of
title : *Held* that the action was maintainable against a defendant, who had
a regular chain of paper title, but who entered upon the premises after the ex
piration of seven years.

[2.] The Statute of Limitations of this State, not only bars the *right of action*,
after the expiration of seven years, but bars the *right of entry*, also.

Ejectment, motion for a new trial, before Judge Alexander,
Muscogee Superior Court, May Term, 1848.

The defendants in error brought an action of Ejectment in the
Court below, against the plaintiff in error, for the lot of land
known as number thirty five, in the seventeenth district of the
said county of Muscogee.   Upon the trial, the plaintiffs showed a
bond, dated in 1828, for $3000, made by Sowell Woolfolk, to
John Woolfolk, conditioned to be void, if said Sowell should
make titles to said John, to the said lot of land, (with a certain
other lot unnecessary to mention,) on request, that in 1832 or
'33, one Blackburn, as tenant to John Woolfolk, entered upon
the said lot, No. 37, and cleared a field thereon ; that said Black-
burn continued in possession as such tenant, three or four years ;
that at the end of his tenancy, Dr. Walker, John Woolfolk's son-
in-law, by his overseer, tended the land for one year; that the
next year, the same Blackburn, as the tenant of John Woolfolk,
again possessed, and cultivated said lot, and the next two years,
one Bronson, as John Woolfolk's tenant, possessed and cultiva-
ted the same lot, and after him, the next year, one Choat, as
John Woolfolk's tenant, possessed and cultivated said lot, and
after him, the next two years, one Magruder, possessed and cul-
tivated the same, as John Woolfolk's tenant.   And the defendants
in error farther showed, that in February, 1842, the said Magru-
der, having left said lot, and no person being in the actual occu-
pancy of it, one Reese entered upon it, and held it for a year
or two, then sold it to one Norwood, who entered and held it for
a short time, and then sold it to Watkins, the tenant in possession
and plaintiff in error.

The plaintiff in error, showed the grant from the State, to
one Reeves, and a regular chain of title down to himself.

The testimony having closed, the Court below instructed the jury, that if they believed that the tenant in possession, (the plaintiff in error,) had shown a complete paper title from the State, down to himself, and a peaceable entry or possession by himself, or those under whom he claimed, they should find for the defendant, notwithstanding they might also believe from the evidence, that John Woolfolk, one of the lessors, by himself and tenants, had actually occupied and held the premises in dispute adversely, and under claim and color of title, for more than seven years continuously next preceding such peaceable entry and possession of said tenant, or those under whom he claimed. Whereupon, the jury rendered a verdict in favor of the defendant.

The plaintiffs moved for a new trial, on two grounds:

1st. Because the jury found their verdict contrary to law and evidence, and—

2d. Because the Court erred in its charge to the jury.

After argument upon the motion for a new trial, the Court below sustained the same, and ordered a new trial on the grounds of error in the charge.

To which decision of the Court below, the counsel for Watkins excepted, upon which the error is assigned.

DOUGHERTY, JOHNSON & WILLIAMS, and WELLBORN, for plaintiff in error.

HOLT and JONES, BENNING & JONES, for defendants.

M. J. WELLBORN, for the plaintiff in error, presented the following brief of points and authorities:

The verdict in behalf of the plaintiff in error, who was the defendant in the action below, it is easily shown, was the legal result of the proof taken in the cause, irrespective of the correctness of the charge complained of in the rule for new trial; and as such, defendants in error had no ground of complaint against the verdict.

But 1st. Was the charge itself erroneous? On the supposition that Watkins had acquired possession, by entry, or otherwise, *peaceably*, was it not competent for him to defend that possession, on his "complete paper title," as against the prior ad-

verse possession, for seven years, of Woolfolk ? Aside from the
Statute of Limitations, no doubt could exist. Has the Statute
worked any change in this respect ? Certainly not, in its *terms*.
It simply provides a limit to the period within ·which *actions to
recover possession* shall be brought. But Woolfolk, not ·Watkins,
brought the action. There is, then, no application in the lan-
guage of the Act, to Watkin's defence, in the case that was tried
in Muscogee. But will a fair construction of the Act, enable
plaintiff in ejectment, relying upon previous possession, under
color of title alone, to evict one, occupying by possession peacea-
bly acquired, *coupled with title ?* It is conceded that previous pos-
session, however short, will justify a recovery against· a mere
trespasser. Additionally, previous possession for a period of
seven years, will justify a recovery of one relying on a possession
less than seven years, without title. Such was the rule asserted
in *Doe ex dem. Harding vs. Cooke*, 20 *Eng. Com. Law Rep.* 156.
Looking at possession, not as title, but as evidence of title, on ci-
ther side, the Court, in that case, very properly placed its judg-
ment between the parties, upon the strongest proof. The Court,
in the case at bar, did but the same, in principle, when it gave,
in the first instance, the charge which, on the motion for a new
trial it improperly recalled, as error. Watkins, additional to the
presumptive evidence of right furnished by possession, produced
the " complete paper title." Indeed, to assert that Woolfolk was
entitled to 'evict Watkins, in the case made, is equivalent to af-
firming that the adverse possession relied on by him, had extin-
guished the *title* of Watkins, or rather, had *absorbed* it. But such
a proposition cannot bear the test of examination. Suppose
Watkins, being out of possession, had sued .a mere trespasser,
or a stranger to the possession set up by Woolfolk, will it be
maintained, that upon presentation by Watkins of his " complete
paper title," it would have been an available defence on the part
of the tenant, to have referred to the prior adverse possession of
Woolfolk, with a view to prove that the title thus exhibited, had
been, through the agency of such adverse possession, extinguish-
ed or shifted from Watkins to Woolfolk? Certainly not. The utmost
that can be said touching the legal effect of the adverse possession spo-
ken of, is that, in the language of Judge Alexander, it had " tolled
the right of entry" on the part of Watkins. The attention of the
Judge seems to have been diverted from the fact that Watkins

was not defending on the right of entry.    Being already in " peaceable possession," he was defending on the " complete paper title."    It is not denied that the effect of the running of the Statute of Limitations is against one holding title, *out of possession* to toll the right of entry.    Hence the Statute is a good plea in bar by one in possession to an action brought to recover possession.    This results from the nature of the action itself, which looks technically and primarily to the mere right of possession.    *Jackson, ex dem. Wright, and others vs. Deifendorf & Zoller,* 3 *Johns. Rep.* 267.    *Paderich vs. Searle,* 5 *Serg. & Rawle Rep.* 236.    But what follows when this point is reached ?    A mere change of remedy. The claimant of the fee, as distinguished from a lesser estate, if out of possession, and met by the Statute according to the English mode of relief, falls back upon the more formal and ceremonious remedy of the Writ of Right, which raises not merely the right of entry, which he has lost, but the right of property which he has not lost.    3 *Blacks. Com.* 191, *and* 193.    Adverse possession, to raise a presumption (liable to be rebutted) of a grant, must have continued twenty years.    Continued sixty years, it is conclusive evidence of a grant.    1 *Stew.* 287.    3 *Black.* 191, 2.    This writ (of right) is the remedy of those out of possession, suing to recover it, and confronted by the Act of Limitations, and that the effect of such proceeding, in the hands of a British subject holding the fee, is to override the possessory right acquired by the Statute of Limitations, is the best proof that it was competent for Watkins, being practically possessed, to defend himself in the case at bar on his right of property.    " An undisturbed possession of twenty years is evidence of an estate in fee, *if no other title appear*, and upon such evidence a plaintiff may recover in ejectment.    *Note* 1, *Ang. Lim.* 397, and cases there cited.    There was no error in the charge originally given and subsequently repudiated.

But again, according to the testimony taken on the trial below, " no actual occupancy existed at the time of entry in 1842, of Reese, under whom Watkins claimed ; and we insist that as against the legal title the former occupants must be regarded, in the absence of purposes disclosed to the contrary, as having *abandoned* possession.    No continuation of the claim of title on the part of Woolfolk, pending the vacancy of the lot that existed when Reese entered, is shown, and nothing which is not

proved, is to be presumed in favor of adverse possession, as against the legal title. *Angell on Lim.* 404. 3 *Johns. Rep.* 169. Between three and four years elapsed before suit was instituted. This must be deemed a waiver of possession by Woolfolk. 1 *Serg. & Rawle,* 111. As to the effect of abandonment of possession by one not having title, see S*mith, ex dem. Teller vs. Lorillard,* 10 *Johns. Rep.* 338. *Jackson, ex dem. Klock and another* 16 *Johns. Rep.* 314.

But again, possession under *color of title* is necessary to render possession *adverse* under the Statute of Limitations. In this respect the doctrine of adverse enjoyment of real and personal property varies, for reasons founded in the respective natures of the two forms of property. Title to real estate exists, and can be conveyed alone by deed or descent. Personalty passes by simple delivery. Is the bond for titles of Sowel Woolfolk to John Woolfolk color of title? The recovery by Woolfolk, if to be had, is, of course, to depend in connexion with prior possession on the color of title supposed to be reflected from the bond held by John Woolfolk, executed by Sowell. It is observable that no title whatsoever has been traced to Sowell, no possession of the lot by him; nor has it been shown that any money passed from John to Sowell, in payment for the land. Respecting what constitutes color of title, much conflict exists. It is the office of the Court to select, for its guide, those cases most conformable to principle and sound policy. Looking into the paper exhibited as color of title, we find that it is neither, in language nor effect, a conveyance of the title to the land in dispute. It proposes not to convey title. It is a personal covenant on the part of Sowell Woolfolk, to pay John Woolfolk a sum of money. Upon breach of this promise, an action of debt to recover the amount acknowledged to be due, would have been a proper remedy. It is true, that a condition is inserted in the paper, to the effect, that it shall be void on the making of titles to the obligee, to the land. But under construction, can it be ruled to be more than a mere contract to convey. As a mere personal covenant, then, how can it be regarded as a color of title? In the appendix to the last edition of *Adams on Ejectment at page* 478, it is said that "Instrument, which do not purport to convey title, as leases, contracts, &c. cannot be the foundation of adverse possession. The case of *La Frombois vs. Jackson, ex dem. Smith et al. in error,* 8 *Cow.*

*Rep.* 589, 596, is remarked upon.    In that case, it is observed, Chancellor Jones gave an individual opinion, that if the tenant held under an executory contract for the purchase of the land, and *had paid the purchase money*, he acquired, thereby, an equitable title that might be deemed to render his possession adverse.    But the annotator distrusts the opinion.    If Chancellor Jones were correct, still the case would not embrace the claim of Woolfolk, for the reason, that according to the evidence, he paid nothing for the land.    1 *Con.* 610. 5 *Con.*    12 *Mass. Rep.* 325.    6 *Con.* 401.    9 *Wheat. Rep.*288.    2 *Nott & McCord's Rep.* 417, referred to in *Adams on Ejectment*, 57. *(last ed.)*

But again, the tenant, to avail himself of color of title, must have acted in good faith, that is to say, he must have believed in, bargaining for the land, that he treated with one *authorised to sell*, otherwise, the Statute might be converted into a means of fraudulent usurpation.    *Willer et al. vs. Shaw.* 7 *Serg. & Rawle.* 138. *Doe ex dem. Jones vs. Bidly*, 2 *N. C. Rep.* 400.    *McWer et al. vs. Ragan et al.* 2 *Wheat. Rep.* 29, *(by Chief Justice Marshall.)* and *Ten Eyck, et al. vs. Frost*, 5 *Con. Rep.* 351, *cited at page 485 and 486, of appendix to Adams on Eject.* 9 *Wend.* 523.    But what ground could have existed for confidence in the right of Sowell Woolfolk, the obligor, to convey or covenant to convey? According to the proof, Sowell Woolfolk was a total stranger to the title, and out of possession.

But lastly, there was no proof of seven years *continuous* possession on the part of Woolfolk, previous to his loss of possession. All the authorities agree, that the possession must have been *continuous*, as well as adverse, for the period fixed by the Act of Limitations, in order to toll the right of entry.    *Angel on Limitation*, 428.    2 *Hayw. Rep.* 57.    1 *Johns. Rep.* 156.    9 *Serg. & Rawle*, 26.    The proof of possession by Woolfolk, falls far short of the rule.    It is not pretended that he ever settled the lot, enclosed it, or made valuable improvements on it.    He seems, it is true, to have held possession of the lot, in the possession of Blackburn, on terms not stated, for three or four years, beginning in 1832 or 1833.    Then came the independent possession, for one year, of Dr. Walker, a son-in-law.    Let it be observed, that it is carefully recorded of all the tenants named, except Dr. Walker, *that they held under Woolfolk.*    Touching the authority by which Walker held possession, the evidence is silent.    As such, the pos-

session of Dr. Walker is, of course, to be deemed his own, in law. He occupied by his overseer. It is taken for granted, that the circumstance of Dr. Walker's being son-in-law of Wool-folk, cannot be brought forward to show that he held, like the others, as tenants to Woolfolk. Thus, the intervention of Dr. Walker's possession, breaks the series of tenancies, the sum total of which is necessary to complete the period fixed by the Act of Limitations, upon which Woolfolk relies. Commencing anew with the termination of the independent possession of Dr. Walker, seven years did not elapse before the abandonment of the lot by McGruder, in February, 1842. And therefore, the plaintiff's claim fails, as well in respect of duration of possession, as in the other element of adverse possession, to wit: color of title. The verdict, then, having been awarded to the party entitled to recovery, it was error in the Circuit Judge to set it aside, and order a new trial.

JONES, BENNING & JONES, for defendant.

Seven years of adverse possession of land, under claim and color of title, gives the occupant a complete title—enables him to maintain ejectment against any one who enters on it afterwards against his will, even against him who has the complete chain of conveyances from the State down to himself. *Angel on Lim.* *(Ed.* 1846,) 398. 3 *Johns.* 269. *Jackson vs. Rightmyer,* 16 *John.* 314. 8 *Wend.* 440. *Fredrick vs. Scarl.* 5 *Serg. & Rawle.* 236. *Moody and others, vs. McKim,* 5 *Munford,* 374.

An equitable title is sufficient to constitute such "color and claim," and if complete, is, itself, executed by the Statute of uses. *Angel on Limit. (Ed.* 1846,) 437, 438. 6 *Peters,'* 440, 441. 6 *Munford,* 40. *Cowp.* 46. 2 *Wend.* 134. *Pitts vs. Bullard,* 3 *Kelly,* 5, 17, *and cases cited.* 2 *Watts,* 150. 9 *Serg. & R,* 484. *Prince,* 447.

And where the equitable title is complete, a conveyance of the legal title to the *cestui que trust* ought to be presumed, and therefore, even in ejectment, such legal title, though apparently outstanding, will not be allowed to be set up to the prejudice of such equitable title. *Bul. N. P.* 110. *Doe ex dem. vs. Hodsden, Staple,* 2 *T. R.* 696, 7. *Cowp.* 473. 1 *Green. Ev.* §46. *Doe vs. Cooke,* 6 *Bing.* 173. *(recognizing Lade vs. Holford & 4 T. R.* 682, 7 *T. R.* 2.) 2 *Wend.*

36, 37.   *Cowen & Hill's notes to Philips' Ev. Part II.* 367, 8, 9, 370.   11 *Johns.* 456.   1 *Jacob & Walker,* 599. *(recognizing 4 T. R.* 682.) · 7 *Johns.* 5, 10.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] The only question presented by the record in this case, is, whether seven years possession, under *color of title* of lands, tenements, or hereditaments in this State, will entitle the party, having such possession, to maintain an action of Ejectment, against one, who has entered upon the premises in dispute, after the expiration of said seven years, claiming to hold the same, under a regular, and perfect chain of title, from the State to himself. The decision of this question must depend upon the construction to be given to the Act of 1767. *Prince's Dig.* 573. That Act purports to be " An Act for limitation of actions, and for avoiding suits in law." For quieting of men's estates, and for avoiding suits, it is declared by the first section of the Act, "That all suits of *formedon in descender, formedon in remainder, and formedon in reverter,* of any lands, tenements, or hereditaments, or *any other writ, suit, or action whatsoever,* at any time hereafter to be sued or brought, by occasion, or means of any title, or cause, heretofore accrued, happened, or fallen, or which may hereafter descend, happen or fall, shall be sued and taken within seven years, next after the passing of this Act, or *after the title and cause of action, shall, or may descend or accrue to the same, and at no time after the said seven years*; and that no person or persons, that now hath, or have, or which hereafter may have *any right or title of entry,* into any lands, tenements or hereditaments, shall at any time hereafter, make any entry, but within seven years next after the passing of this Act, or after his or their right, or title, shall, or may descend or accrue to the same, and *in default thereof, such persons, so not entering, and their heirs, shall be utterly excluded, and disabled from such entry, after to be made.*"

The third section of the Act provides, that not only those who have failed to prosecute their suits, within the time limited by the Act, but also all manner of persons whatever, that shall at any time claim *under* such person or persons, who may have lost, or who may hereafter lose their right, by neglecting to sue, and prose-

eute their claim within the time limited, shall be in like manner barred, as those under whom they claim, and that this Act, and such clause, or clauses herein, as relates to the matters aforesaid, may be given in evidence to a jury, upon the trial of any claim, matter, or right, to any land, or tenements in question, between party and party, and that the Judges upon all such trials, shall allow the same to be given in evidence, so far as concerns the said matter in difference.

The plaintiff in error insists, that although the plaintiff below might have maintained his action of Ejectment on his *prior* possession, as against one having a *subsequent* possession of the premises, he cannot maintain it against one who has the possession under a regular chain of title. Mr. Angel states the rule to be, that "It is unquestionable where land has been held, under a claim to the fee, for the time prescribed by the Statute, and an entry is made by the party who has the written title, such party may be dispossessed by an Ejectment brought by him who has so held and claimed." *Angel on Limitations,* 398. *Adams on Ejectment,* 76, 77. *Jackson vs. Oltz,* 8 *Wend. Rep.* 440. But we think our Statute must control this question, in favor of the plaintiff, in the Court below. He is shown to have been in possession of the land, either by himself, or by tenants, for more than seven years, under *color* of title, before the entry of the defendant thereon. Under the Statute, the party having the right or title to the land, must bring his action within seven years, after the accrual of his *cause of action,* and at no time thereafter, and if he fails to bring such action, or enter upon the land within seven years, the Statute declares in the most peremptory manner, that he and his heirs *shall be utterly excluded, and disabled from such entry, after to be made.* After the title of the plaintiff became *perfect,* by his adverse possession, under the Statute, the defendant entered upon the land, and now claims to hold it, under his paper title, as against that statutory title. To allow such an entry by the defendant to prevail against the plaintiff's title, acquired under the Statute, would be, in our judgment, a virtual repeal of the Statute. The defendant's *right of entry,* upon the land, was as effectually bound, as his right of action would have been, had he instituted it against the plaintiff, to recover the possession of the premises. The Statute not only bars the *right of action,* when there has been adverse possession, under claim of right for seven years,

but after that period, it as imperatively bars the *right of entry,* also, for the purpose of quieting men's estates, and for avoiding suits in law. The Court below, in reversing its judgment, and granting a new trial, has offered the highest evidence of its desire to maintain the integrity of the Statute, and to carry into effect the legislative will, and to make the Statute what it was intended to be, a Statute of repose.

Let the judgment of the Court below, be affirmed.