Walls *et al. vs.* Smith *et al.*

No. 2.—SAMUEL M. WALLS *et al.* plaintiffs in error, *vs.* BENJAMIN M. SMITH *et al.* defendants.

[1.] A deed was witnessed by two persons, one being a Justice of the Peace. In the clause of attestation, there was no certificate of delivery : *Held,* that inasmuch as the official signature of the Justice was received in lieu of an affidavit by a witness, that the deed was signed, sealed and delivered before admitted to record ; and the same being found on record; by virtue of the maxim, "that things are held to be legally and properly in their existing state until the contrary is shown," the deed should be held to be legally and properly on the record, by due proof of signing, sealing and delivery, until the contrary is shown.

[2.] A simple indorsement of "*alias fi. fa.*" upon an execution which, in all other respects, purports to be an original, does not make the process an *alias fi. fa.*; but the indorsement will be controlled by the body of the instrument.

[3.] A *fi. fa.* with entries of levies thereon, in which a tract of land is described ; and which is by one of said entries returned as sold by the Sheriff, and purchased by one under whom defendants claim, may be admitted as *color of title. Color of title* is anything in writing connected with title to land, which serves to define the limits of the claim.

[4.] A deed which is commenced by one Sheriff and left unfinished, and afterwards completed by his successor, can operate as *color of title* only from the date of its completion.

[5.] *Color of title* can be of service only in aid of possession ; and possession thus aided, can be matured into title to the extent to which it is intended to gain possession.

Ejectment, in Whitfield Superior Court. Tried before Judge TRIPPE, April Term, 1855.

This action was brought in February, 1852, to recover lot

Walls *et al. vs.* Smith *et al.*

No. 283, 9th district, 3d section. The defendant relied on the Statute of Limitations.

The following points arose on the trial : A deed being tendered by the plaintiff from David B. Tarvin to himself, it was objected to on the ground that it no where purported to have been delivered. The Court over-ruled the objection, holding that the possession of the deed by plaintiff presumed a delivery; and on this decision error is assigned.

The defendant proved that John Bishop was in possession of the land in 1844, and continued therein until the defendant came into possession, who kept it until this suit was brought. A lease was produced from James Morris to Bishop, dated 14th Nov. 1844, letting 25 acres of the land.

Defendant then introduced a *fi. fa.* in favor of Chastain & Luck against David B. Tarvin, upon which was entered a levy upon the land in dispute, dated 25th of April, 1843; and then the following entries : "Disposed of the above levy by selling the lot of land on the 6th of June, for thirty-one dollars, June the ;" and on the paper attached was the following: "Disposed of the levy on lot No. 283, 9th district, 3d section, by selling to James Morris, on the first Tuesday in March, 1844, for thirteen dollars and twenty-five cents. This 5th day of March, 1844.

" C. W. BOND, Sheriff."

This paper was offered as color of title. Plaintiff objected to it, on the ground that it appeared to be an *alias fi. fa.*; and no order of Court was shown authorizing an *alias* to issue. The Court sustained the objection and defendant excepted.

Defendant then introduced Charles W. Bond, the former Sheriff, who testified that he had sold the land to Morris, in March, 1844, and had received the money; that he had begun to write a deed, but being interrupted, he left it unfinished, and never finished it.

Defendant then introduced a deed to the land from R. S. Hancock, Sheriff, dated 2d Sept. 1846, reciting that Bond

had offered the land for sale, as Sheriff, and that Morris be-
came the purchaser. Bond testified that this was the same
paper which he had left unfinished, now finished and signed
by his successor.

Defendant showed that he had purchased Bishop's lease,
by which he held under Morris.

The Court held, and so charged the Jury, that the Sheriff's
deed, made by Hancock, could not operate as color of title,
except from its date; that, therefore, there was no color of
title earlier than 1846, except the lease, which could only
support a claim to the 25 acres embraced in it; and that the
purchase by Morris, and payment of the money, in 1844,
could not support the Statute of Limitations. The Jury
found for plaintiffs.

To this charge and the other decisions of the Court, the
defendants excepted, and assigned sundry grounds of error
thereon.

HULL; AKIN, for plaintiffs in error.

WRIGHT; HUTCHINS, for defendants in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] An objection was made to the deed from Tarvin to
Smith, because there was no evidence of delivery in the cer-
tificate of attestation.

This deed is attested by two witnesses, one of whom was a
Justice of the Peace. The attestation by a Justice is received
in lieu of the affidavit of a subscribing witness. Being on
the record thus, in the "official attestation," (to use the
language of the Act of 1827,) of an officer appointed by law,
to attest the due and proper execution of such an instrument,
and to make such certificate thereof as would admit the
paper to record after the same was executed before him, one of
the leading maxims of presumptive evidence applies, viz:
that "things are held to be legally and properly in their

Walls *et al. vs.* Smith *et al.*

existing state, until the contrary is shown." That is to to say, under such circumstances, the deed will be held to be legally and properly on the record by due proof of signing, sealing and delivery, until the contrary is shown. This presumption is strengthened in this case by the fact, that the deed comes from the custody of the grantee.

[2.] The next point made was, that a *fi. fa.* tendered in evidence was an *alias fi. fa.*; and that before it should have been admitted, an order of the Court, authorizing its issue, should have been shown.

This is not an *alias fi. fa.* in any proper, legal and technical sense of the term, whether such a *fi. fa.* be considered as a process issuing into different counties, or a second *fi. fa.* issuing after the first has been returned. According to our practice, we do not issue such *fi. fas.* And it is not pretended that this is any thing more than an established copy of a lost original. The entry indorsed of " *alias fi. fa.*" could not, then, have been intended to mean more than this. But have we the right to attribute this to it as its legal significa-tion? The record does not authorize it. As this paper comes to us, it is in the form of an original *fi. fa.* It is signed by the Clerk, as such instruments are; and so far, it is regular and valid. But we know not by whom the indorse-ment is made. That entry is in no wise authenticated by the Clerk or other officer. Shall it be allowed to control the un-doubted official act of the Clerk? As a reason why it should not, take this illustration: Suppose, that in the face of the *fi. fa.* the amount recovered was stated to be one hundred and twenty-seven dollars and thirty-three cents, instead of one hundred and thirty-seven dollars and thirty-three cents, the amount indorsed upon the process. The writing in the body of the instrument, would of course, control as to the amount.

It will be remembered that the objection here was to the *fi. fa.* as it was presented. We will not say, but that if it had been made to appear, by some undoubted and au-thentic feature of evidence, that the same was a copy, but that an order of the Court should have been required. As it

stands, however, the indorsement, *alias fi. fa.* is simply sur-
plusage, so far as legal effect is concerned.

[3.] After the *fi. fa.* was rejected, the defendants offered
an entry, signed by the Sheriff, and attached to the *fi. fa.*
which purported to be a levy on lot 283, in 9th district, 3d
section of Cherokee Lottery, and a return and disposition of
the subject of levy, by selling the same on the 5th day of
March, 1844, to James Morris, for thirteen dollars and
twenty-five cents. We think that these entries should have
been admitted as color of title, together with the *fi. fa.* To-
gether they would have served to define the claim. And
color of title is any thing in writing, connected with the title,
which thus serves to define the extent of the claim. (*Bank
vs. Smyres,* 2 *Strob.* 29. *Beverly and another vs. Burke,*
14 *Geo.* 72.)

Failing in getting these entries before the Jury, the Coun-
sel for defendants asked the Court to charge that the pur-
chase of said lot, by Morris, and the payment of the purchase
money, taken in connection with the possession of Bishop and·
Walls, would constitute color of title. This the Court re-
fused.

It cannot be doubted, that the purchase of the lot and pay-
ment of the purchase money, in the absence of a better title,
would constitute a title to the land, which could be enforced
in a Court of. Justice. But it was offered here as color of
title in aid of possession.

If such color of title is not evinced by the unwritten facts
of purchase and payment, we think that it may be by writ-
ten entries which show these things in connection with a
given or specified lot of land. And we have said that such
entries, in this case, might have been used, together with the
*fi. fa.* in aid of possession. The character of this possession
we will presently consider.

[4.] We think the Court was right in charging that
the deed of Hancock, as Sheriff, took effect, certainly, as to
third persons, when used as color of title only, from its date.
Of course, whilst the deed was in an unfinished state, it could

Walls *et al. vs.* Smith *et al.*

not properly be said to be legal notice of anything. And it was so unfinished, though it had been partially written by the former Sheriff, until the day of its date.

But the Court charged that there was an entire absence of paper title until the execution of the deed by Hancock, set up as color of title, except the instrument which was called a lease; and that that operated as color of title only to the extent of the amount of land therein described.

[5.] While we differ from His Honor, Judge TRIPPE, in the opinion that the entries on the *fi. fa.* may not be used to show color of title, and whilst we doubt that what is called the lease can be so regarded, not being signed by Morris; yet, we so far agree with him, as to hold that such evidence as there is, of color of title, is only supported by evidence of a possession of the twenty-five acres referred to in the lease.

It is true, that a landlord settling a tenant on his patent with an intent to gain possession, (giving his tenant no bounds,) is, *ipso facto*, in possession to the limits of his patent. (*Lee vs. McDaniel*, 1 *A. K. Marsh*, 234.) And if one be living on land, his possession is not restricted to the house in which he resides, but extends over all that he claims with color of title. And the rule applies where the possession is by a tenant. (*Johnson vs. McMillan*, 1 *Strob.* 143.) But in this case, the claim which is supported by color of title, was only an intention to possess to the limits of the twenty-five acres; and the possession, therefore, can be carried no further, according to the case before us.

Let the judgment be reversed.