PATRICK K. SHIELS, plaintiff in error, vs. CAROLINE A. LAMAR, administratrix, defendant in error.

1. A written agreement to divide lands owned or claimed in common, though made by the administrator of one of the tenants in common, without an order from court for the partition thereof, is admissible in evidence as color of title.

2. Though the description in said agreement be not as clearly expressed as it might be, yet when it contains certain *indicia* by which a surveyor can ascertain the dividing line agreed upon, the paper is evidence of color of title to the extent of the true dividing line; and where that line, under said written agreement, actually was, is a question for the jury, to be fixed from all the evidence, including that of the surveyor who ran the line according to the agreement, though he did so long after the agreement to divide was made.

3. Seven years' possession of the land up to the line agreed upon, by the party who made the agreement and those who hold under him, is sufficient title to recover in ejectment.

4. Disputed lines between adverse claimants of land, and questions of where old fences stood in the past, and how long they stood in certain localities, are peculiarly questions of fact for the jury; and where the evidence is conflicting, and the presiding judge is satisfied with the finding, this court will not interfere, unless a strong and clear case of wrong to him be made to appear plainly by the plaintiff in error.

5. Newly discovered testimony, consisting of deeds on record affecting the very lands in dispute, will not warrant the granting of a new trial; such records are always accessible to both parties, and diligence would examine and procure them in time for the trial; especially is this rule applicable when it does not appear by affidavit, that the movant and his counsel were ignorant of the existence of such deeds at the trial.

Ejectment. Color of Title. New Trial. Before Judge Tompkins. Chatham Superior Court. February Term, 1876.

Reported in the opinion.

Jackson, Lawton & Basinger, for plaintiff in error.

Geo. A. Mercer, for defendant.

Jackson, Judge.

Mrs. Lamar, as administratrix on the estate of her husband, sued the plaintiff in error for a piece of land, being a strip, or strips, of land, lying in what would have been President street extended, had it been extended. Mrs. Lamar claimed to the southern line of the width of the said

street, and the defendant below, Shiels, claimed to the centre thereof. The controversy involved about two acres of land in a long strip, or two strips, making one continuous parcel.

The plaintiff's title consisted of an agreement in writing made between G. B. Lamar, the feoffor of C. A. L. Lamar, plaintiff's intestate, and Bayard, the administrator of the estate of Bayard, the feoffor, with his two sisters, heirs of Bayard, deceased, of defendant, Shiels, to divide certain lands on a certain line between them; the deed of G. B. Lamar to C. A. L. Lamar, and letters of administration, and an attempt to prove possession since 1845 in G. B. Lamar, C. A. L. Lamar and the administratrix, up to the time, in 1868 or 1869, when defendant built a fence in the centre of what would have been President street extended. The defendant's title was a deed from Bayard and his sisters, in 1868, to the land up to the *southern limit* of President street, if extended, at least lying, as described, *south* of that street.

1. Objection was made to the introduction of the agreement of 1845 to partition the land; it was admitted as color of title; and the jury finding for the plaintiff, Mrs. Lamar, this is one error, on the refusal of the court to grant a new trial, which was pressed in the argument before us, and on the determination of which the case, perhaps, mainly depends. The objection was, that Bayard, as administrator, had no legal right to bind his sisters, as heirs at law of their deceased father with him; that he had procured no order of court to divide or partition the land with G. B. Lamar; and that the paper was void as evidence of title. It was also objected, that the paper did not set out such metes and bounds as to describe the dividing line so that the same could be ascertained. In respect to the first objection, we hold that the paper was good as color of title, and, as such, that it ought to have been admitted as evidence before the jury—33 *Ga.*, 242; 19 *Ga.*, 8.

2. The remaining question is, does the paper sufficiently

define the boundary? It seems that the Bayards and Lamar owned lands which adjoined each other, and that the administrator of Bayard deceased, and Lamar, agreed to separate them by a line. That line, as described, is as follows: "Beginning at the northeast corner of the lots belonging to the estate of N. S. Bayard, lying south of President street continued, and running southwardly along the foot of the hill, on the eastern line of the lots belonging to the said estate, and to F. M. Stone, Wm. Williams and others, now known as Gilmersville, until it strikes the southern line of said lots, then eastwardly along the said southern line, which also divides this property from that of W. Pendergrast, formerly M. Dillon's, distance five chains and ninety-three links, thence northwardly, in a line parallel with the line first mentioned as running southwardly to President street continued, thence westwardly to the point of departure—distance five chains and ninety-three links, containing within said lines, four acres and sixty-one hundredths, shall be the part assigned and allotted to N. J. Bayard, administrator as aforesaid, free from all incumbrance or molestation from G. B. Lamar, his heirs and assigns, and the remainder of said tract, lying eastward thereof, shall be the part assigned and allotted to the said G. B. Lamar," etc., etc.

We see no reason why this line could not be ascertained and fixed by a competent surveyor. It tells him where to begin and how to run, to what length, and where to turn, and in what direction, and the number of acres, describing adjoining lots and streets, extended or continued. Therefore we think that the objection to the introduction of the paper on the ground that the land or line is so uncertainly described that it cannot be found, is not well taken, and that it was properly read, as color of title, to the jury. 12 *Ga.*, 431.

Where the line actually ran along the tract of land, was a question of fact for the jury, as the location of all land under descriptions in deeds, must be. On this question a surveyor—the city surveyor for Savannah, it seems, and

therefore he must be presumed intelligent and competent—was sworn, and he deposed that he took the deed of partition, found the land and the line, and that it gave the land in dispute to the plaintiff below—Mrs. Lamar.

Other evidence was introduced, to the effect that, since 1845, a fence had been put on this line, or sheds built, covering the land up to it, and that the Lamars had held it for several years, certainly more than seven years. If they held any part of it, they held it up to the line which this deed of partition claimed for them—Code, §2681; 5 *Ga.*, 261; 15 *Ga.*, 545; 39 *Ga.*, 550; 44 *Ga.*, 607; 57 *Ga.*, 204.

3. 4. They held it more than seven years consecutively before Shiels built his fence and occupied to the centre of the street, in 1868 or 1869. This gave them title on which they could recover, and sustains the verdict. It is true that the evidence is conflicting as to where the old fence stood—some witnesses asserting that it stood on or near the centre of President street extended, and others, that it stood there only before 1845, when the partition was agreed upon. But these questions of evidence as to where old lines ran and old fences stood years ago, are peculiarly for the jury, and when the jury have ascertained the line and fixed the fact, and the presiding judge approves the finding, it would require a strong, clear case, plainly made to appear to us, of wrong to the plaintiff in error, before we would interfere.

On this branch of plaintiff's title, we think the evidence sufficient to sustain the verdict; and this view renders it unnecessary to go into the other branch of it, to-wit: twenty years possession without color of title, and the presumption of a grant from the state, arising from such long occupancy.

5. In respect to the ground of error in overruling the motion based on discovery of new evidence, it is enough to say that the deeds were recorded, were about this land, that both parties seemed to claim under McIntosh from the deed of partition reciting that fact, and were interested in the same chain of title; that the records were open to both, and

ordinary diligence would have ascertained and procured the evidence on the trial.

Besides, it does not appear from any deposition accompanying the motion, that the plaintiff and his counsel did not know of the existence and effect of the deed and maps accompanying it, before and at the trial.

From the best view we can get of the whole case from the evidence disclosed in the record, the charge of the court, and the decision overruling the motion for a new trial, we conclude that no sufficient reason appears to authorize us to set aside the verdict and order a new trial over the discretion of the presiding judge.

Judgment affirmed.