## STREET *et al. v.* COLLIER *et al.,* executors, *et al.*

1. Color of title is anything in writing connected with the title which serves to define the extent of the claim. It matters not how imperfect or defective the writing may be, considered as a conveyance, if there is a writing which defines the extent of the claim.
2. A deed by a husband, executed prior to the married woman's act of 1866, which purports to convey land of the wife, is good as color of title, notwithstanding that at the time of the conveyance the husband had not reduced the property to possession.
3. A deed executed by one purporting to act as attorney in fact for another is good as color of title, though the one signing the paper as attorney had no authority, in writing or otherwise, to represent the owner in the transaction.
4. A deed signed by the administrators of an estate is good as color of title, although it does not purport upon its face to have been executed under an order of the court of ordinary.
5. Only moral fraud will prevent possession under color of title from ripening into a prescriptive title.
6. Where one purchases property belonging to cotenants, and obtains a conveyance which passes title to the interest of one cotenant, and which is good as color of title to the interest of the others, and goes into possession of the whole property, claiming it as his own, the conveyance, the record of the deed, and possession thereunder are notice to the cotenants, whose interests did not pass under the deed, of the adverse claim of ownership by the purchaser of the property; and when such possession is continued for more than seven years, the purchaser has a prescriptive title against the true owners who would have been his cotenants in the absence of adverse possession continuing for that period of time.
7. There was no error in directing a verdict in favor of the defendants.

Argued July 8, — Decided August 12, 1903.

Petition for partition. Before Judge Lumpkin. Fulton superior court. January 19, 1903.

*E. W. Coleman* and *Burton Smith*, for plaintiffs. Collier was estopped from denying the recitals in the deed to him : Civil Code, §5150; *Ga. Rep.* 112/158; 106/503; 105/555; 96/54; 54/168; 53/505 (7). Charles A. Prindle got no title to the land by right of his wife: *Ga. Rep.* 50/165; 71/231 (2a); 72/51 (1, 2a, b); 82/704 (5). There was no authority on the part of Mrs. Kimberley's administrators, the alleged attorney in fact, or Charles A. Prindle to sell the land: Civil Code, §§ 3450, 3463, 3002; *Ga. Rep.* 50/235; 61/478; 90/113 (3, 4); 97/437. The deed to Collier was not sufficient basis for prescription : *Ga. Rep.* 25/178; 81/655–9; 108/121; 116/915 (2); 1 Am. & Eng. Enc. L. 855. What is necessary to sustain a prescriptive title: Civil Code, § 3589; *Ga. Rep.* 12/469; 15/545; 19/27; 26/182; 30/625; 32/572; 74/120, 694; 81/9; 83/328; 97/592; 104/151; 105/553; 114/337. Collier was a cotenant with Mrs. Prindle and W. C. Street and their descendants. What is necessary for him to hold adversely to them: Civil Code, § 3145; *Ga. Rep.* 26/515 (3); 47/674; 58/590; 61/608; 65/538 (6); 70/796; 72/791 (1); 75/169; 83/311; 84/84; 88/514; 95/267; 104/596; 113/60; 1 Am. & Eng. Enc. L. 801–2; 17 Id. 680, 709, b and c. When Collier abandoned possession he lost his prescriptive right, if he had any : *Ga. Rep.* 26/191 (7); Id. 582 (3); 110/56.

*Westmoreland Brothers* and *W. R. Hammond*, for defendants, cited, as to color of title: *Ga. Rep.* 14/70; 15/336; 16/593; 17/108; 19/8; 22/56; 26/638; 32/448; 33/239; 58/427, 590; 66/169; 81/655; 96/360. Presumption from long exercise of proprietary right: Lawson's Pr. Ev. 403, 419, and cit.

COBB, J. Street and others brought their petition against George W. Collier and the Mercantile Trust and Deposit Company, for the partition of certain lands; it being alleged that petitioners were the owners of a two-thirds interest in the lands, that Collier was the owner of a one-third interest, and that the Mercantile Trust and Deposit Company held a security deed upon the lands, executed by Collier. The defendants filed their answer, denying that the plaintiffs had any interest whatever in the lands, and asserting that Collier was the sole owner. All parties claimed under Sarah A. Kimberly, who owned the land prior to 1847. After her death, and on June 4, 1847, a deed was made " between Charles A. Prindle and

Samuel M. Street, as administrators of the estate of Sarah A. Kimberly, late of McIntosh county, intestate, and also in their own right as heirs at law of the said Sarah A. Kimberly, deceased, and also Waldegrave C. Street, by his attorneys in fact, Charles A. Prindle and Samuel M. Street, as heirs at law of Sarah A. Kimberly, deceased, of the first part, and George W. Collier, of the county of DeKalb and State aforesaid, of the second part." This deed recited, "that whereas the said Charles A. Prindle in right of his wife, Elizabeth A. Prindle, formerly Elizabeth A. Street, Samuel M. and Waldegrave C. Street are the only heirs at law of the said Sarah A. Kimberly, deceased; and whereas, in order to the saving of both time and expenses, they, the said heirs, have agreed that the said administrators shall and may dispose of the estate of said Sarah A. Kimberly, deceased, without application to the court of ordinary, and without any order therefrom, and at private sale, and execute title to the same in due form of law," in consideration of the sum of one hundred and fifty dollars, the land was conveyed to Collier. This deed was signed by Charles A. Prindle and Samuel M. Street, administrators, and by Charles A. Prindle as heir at law, and Samuel M. Street as heir at law and "Waldegrave C. Street, by his attorneys in fact, Charles Aug. Prindle and Samuel M. Street." The case came on for trial, and at the close of the evidence the judge directed a verdict for the defendants, and this is assigned as error. The able and learned judge who presided at the trial filed an opinion giving the reasons which controlled him in directing the verdict. This opinion states the law applicable to the case so clearly and fully that we adopt the same as our own, using the exact words of Judge Lumpkin, which are as follows:

The first contention in regard to the matter of prescription is that the deed just referred to did not amount to color of title as to these two interests, under which Collier could prescribe. What is color of title? One of the earliest cases, if not the earliest, in Georgia in which a definition has been given to "color of title" is that of *Beverly* v. *Burke*, 9 *Ga.* 440. On pages 443 and 444 it is said: "What is meant by color of title? It may be defined to be a *writing*, upon its face *professing* to pass title, but which does not do it, either from want of title in the person making it, or from the defective conveyance that is used — a title that is imperfect, but not so obviously so that it would be apparent to one not skilled in

the law." The entry by the sheriff on the fi. fa., of a levy, sale, and purchase of land, has been held sufficient to amount to color of title. *Walls* v. *Smith*, 19 *Ga.* 8. A sheriff's deed, unaccompanied by any fi. fa., has been held sufficient as a color of title. *Burkhalter* v. *Edwards*, 16 *Ga.* 593. It is contended in the present case that Prindle was not authorized by law to convey his wife's interest, and that Prindle and Street, who signed the name of Waldegrave C. Street as attorneys in fact, were not shown to have been authorized to do so; and therefore that the paper so signed could not operate as color of title. Nothing could be more unauthorized than for a sheriff, as a public official, to sell property without a fi. fa., because his power of attorney to make the conveyance (or what is equivalent to a power of attorney to make a conveyance) is the fi. fa. In other words, it is a writ authorizing him to act; without it he has no such authority. If, therefore, a conveyance by a sheriff, without any proof whatever of the fi. fa., amounts to color of title, surely a conveyance by persons purporting to act as attorneys in fact, or by a man in 1847 purporting to convey his wife's interest, would not be more absolutely without authority than in the case of the sheriff, and would be sufficient to amount to color of title. If it were shown that the persons signing the deed as attorneys in fact had authority to do so, so far as their principal was concerned, it would be title, not color; and if it appeared that Prindle was authorized to convey his wife's interest, this conveyance, as to her, would be title, not mere color. To hold, therefore, that the paper is not color of title, because the persons executing it had not the full authority of law which, if they had, would make it not color but title, would destroy the distinction between color and title. In the case of *Field* v. *Boynton*, 33 *Ga.* 239, 242, it is said: "Color of title is anything in writing connected with the title which serves to define the extent of the claim. . . It is wholly immaterial how imperfect or defective the writing may be, considered as a deed; if it is in writing and defines the extent of the claim, it is a sign, semblance, or color of title." Can there be any doubt at all that Prindle and Street claimed to convey for Waldegrave C. Street, and to convey his interest, or that Prindle claimed to convey as heir at law of Sarah A. Kimberly, in right of his wife?

It is said that Collier ought to have known better than to have supposed that Prindle could convey his wife's interest in the estate

before it was divided and he took possession.   Remembering that at that time, if the estate had been divided, Prindle could have reduced his wife's interest to possession, and have conveyed it and made a good title, it is hardly to be charged that a non-professional, who is not shown to have had any knowledge or skill in law, was bound to know that the making of a conveyance before actual division would make a legal difference and prevent the deed from being even color of title.   If Collier knew that clearly and distinctly, he knew more than many of the highest courts of the country seem to have known, and what it would have taken the Supreme Court of Georgia a considerable time to determine, if they ever had determined it to the extent claimed by plaintiffs, which they have not.   An examination of the decisions will show that it required the careful and repeated consideration of the Supreme Court to determine the exact status of the wife's property, when reduced to possession by the husband, when not reduced to possession, and when her interest was in an undivided estate; and what her rights really were resulting from these various situations, prior to the "married woman's" act of 1866.   And unless this humble farmer, who for fifty years has lived in the country near Atlanta and plied his toilsome occupation, is to be held to the standard of an Admirable Crichton, this court can hardly hold that he was so far bound to know the law on the subject in 1847, shortly after the Supreme Court of Georgia was created, and before they had elaborated and enunciated the law, that he could not accept this paper as being at least color of title.   See also, under color of title, *Lessee of Gittens* v. *Lowry*, 15 *Ga.* 336.   In *Payne* v. *Blackshear*, 52 *Ga.* 637, 639, Judge McCay, with that directness of expression which was characteristic of him, said: "As we have said in several cases, it would make the law of prescription useless if, to make it available, men must get a good title or take care."   For other decisions which would most certainly not make it apparent to one "not skilled in the law" (as expressed in 9 *Ga.*) that there was no title, so as to prevent the paper from being color of title, see *Cain* v. *Furlow*, 47 *Ga.* 674; *Prescott* v. *Jones*, 29 *Ga.* 58; *Rogers* v. *Cunningham*, 51 *Ga.* 40; *Findley* v. *Sasser*, 62 *Ga.* 178. Indeed, although in 1847 Prindle did not have a perfect and complete title in right of his wife to her interest in the undivided estate of her mother, he did have an inchoate title which gave him

the right to reduce the property to possession during the coverture and perfect his title. And this inchoate title could be conveyed by him to Collier, carrying a like right. *De Vaughn* v. *McLeroy*, 82 *Ga.* 689 (5), 704, 712. If there was not actual title, surely there was color.

On the subject of the conveyance of the interest of Waldegrave C. Street by Prindle and Street, signing his name by them as attorneys in fact, the case of *Simmons* v. *Lane*, 25 *Ga.* 178, is cited. In that case a bond for title was offered in evidence, signed, " Wyatt Meredith, by his agent William Y. Hansell " (and by William Y. Hansell, who claimed no title). This was objected to on two grounds : (1) because its execution had not been proved, and (2) because no authority had been shown constituting Hansell Meredith's agent or attorney in fact. In the course of the decision it is said : "It shows upon its face, however, that Hansell claimed no title, but admitted the title to be in Meredith. As the bond of Hansell, therefore, it could not serve as color of title. A writing, to serve as color of title, must at least not be one in which the writer disclaims title in himself, but admits title in another. The only purpose of introducing the bond was to prove color of title in the tenant. The bond, therefore, was no more admissible as the bond of Hansell than it was as the bond of Meredith. Its admission was not claimed under the act aforesaid of 1802." If this decision stood unquestioned, this court would feel bound respectfully to follow it, whether he thought it right or wrong. But inasmuch as it has been questioned and practically overruled, as will presently be shown, it is not improper that the court should point out what is deemed to be an error in it. In the first place, the only proof of execution was that the bond was in the handwriting of Hansell. It will be noticed that neither one of the two grounds of objection to the bond contained any reference to the question of color of title. They were solely because there was no proof of the execution, and no proof of authority ; and, so far as the report of the facts shows, the question of color was not made directly in the objection. Hence what was said in regard to what would not constitute color of title as to Meredith's interest was really obiter dictum. This court very respectfully submits that it was an erroneous dictum. As already stated, color of title is anything in writing connected with the title which serves to define the extent of

the claim.    In the case in the 25 *Ga.*, if it had been proved that Hansell had signed the bond for title with Meredith's name by himself as attorney in fact, it would unquestionably have asserted a claim of right to make the bond.   Now, all that color of title need be is the written attempt to convey.   What possible difference can it make on the subject of color of title, or being a writing connected with the title which serves to define the extent of the claim, whether the claim is to convey as an attorney in fact, or as an individual? If the individual had no title, he could convey none; and if the attorney in fact had no authority or power, he could not convey title.    But in either event there would be a writing connected with the title serving to define the extent of the claim.   This court respectfully submits that the learned Justice who delivered the opinion may have rendered a correct judgment in holding that the bond should be rejected, but in the statement quoted he confused title and color of title, and he failed to discriminate between the question whether a paper, if its execution were properly proved, would show a claim of conveyance, and the question whether the person executing it was actually authorized to make the conveyance.    If a deed purports to convey property and is signed by one representing himself as the agent, whether he in fact had authority or not may be a question.    But if a paper claims to make a lawful conveyance by one asserting authority to execute it to the grantee, it would be sufficent as color of title in favor of one receiving it in good faith.    This is very different from offering a will or a deed which does not convey to a person seeking to prescribe under it.    Of course, a will or a deed which purports to convey to one person can not be a color of title in favor of another not claiming under him. I make these suggestions with great respect both to the court and to the learned Judge who rendered the decision ; but I feel authorized to make them, as I shall show that the Supreme Court themselves have doubted the authority and substantially overruled it.

Another illustration of color of title is where one sheriff started to make a deed and left it unfinished, and another finished it. *Walls* v. *Smith*, 19 *Ga.* 8.    The same definition of color of title is repeated in *Burdell* v. *Blain*, 66 *Ga.* 169.    In the case of *Millin* v. *Stines*, 81 *Ga.* 655, it was held, that " Where one bought land in good faith, and received, from one who represented himself as agent of the owners of the land, a bond for titles with the signa-

tures of such owners thereto by such person as agent, such bond, though a forgery, will constitute good color of title; and the grantee of the party purchasing, having in good faith been in possession of the land, under such color of title, for seven years, had a good title by prescription." In this case the decision in *Simmons* v. *Lane*, 25 *Ga.* 178, is cited and distinguished, and on this point practically overruled. The existence of a power of attorney has been sometimes held to be presumed from long lapse of time, with possession. Forman v. Crutcher, 2 A. K. Marshall, 70; Delabigarre v. Second Municipality, 3 La. Ann. 230. It is contended, that, under what was said by the learned Justice who rendered the decision in the *Millin* case, it is incumbent on Collier to prove that these signatures are forgeries, or at least that they were unauthorized, and therefore that the deed was a forgery, in order to utilize it as a color of title. I do not think the decision of the Supreme Court means this; nor is it always quite fair to a judge who renders a decision to pick out some isolated expression used arguendo and use it as conclusive authority. Necessarily, a judge in delivering an opinion is speaking of the thing then before him; and if he uses an expression which under other circumstances might have a different bearing, it is not proper to construe it as conclusive authority. No judge, however learned or however able, can write hundreds of opinions in the course of a year and not make use of some expressions which, if taken alone, might appear to have a different meaning or a different bearing or force from that in which they were used or intended in the context where employed.

That a man who presents a paper as a color of title must prove that it is a forgery before he can use it as color of title would hardly be held by the Supreme Court; nor do I think they so intended to hold. Certainly they did not mean to say that a forgery is better as color of title than a genuine paper, or that a paper must be proved to be a forgery or unauthorized, in order to be color of title. The Civil Code, § 3589, says: "But if such written title be forged or fraudulent, and notice thereof be brought home to the claimant before or at the time of the commencement of his possession, no prescription can be based thereon." Therefore, if a man who offers a paper as color of title must prove that it is a forgery, he must come very near to destroying his case in order to gain it. The case of *Southern Railway Co.* v. *Ethridge*, 108

*Ga.* 121, is cited as announcing the same ruling as that in the *Lane* case in 25 *Ga.*, but a careful examination of the decision will show this is not correct. In the case in the 108 *Ga.* the question, as stated by the Justice rendering the decision, was whether Etheridge or Mrs. Wilson was the proper person to bring the action. Etheridge undertook to bring it by virtue of a bond for title purporting to have been signed, "Helen M. Wilson, by her attorney in fact, A. N. Wilson." On page 122 it is said: "Manifestly Etheridge was not claiming to hold under A. N. Wilson as his vendor, but was asserting title as the vendee of Mrs. Wilson. This being so, no prescription could run in his favor as against her so long as any part of the purchase-money remained unpaid." On page 123 it is said: "While possession thereunder" (that is, under the bond) "might be considered adverse to all the world save only as to her, the really important thing for the plaintiff to establish in the present case was, in view of the evidence adduced at the trial, that he, rather than Mrs. Wilson, was the proper person to bring the action. As the paper offered in evidence by him can not properly be considered as the basis of any prescription against her, it had no evidentiary value whatever upon this question, and therefore the same was clearly inadmissible for the purpose for which it was offered, viz., to show adverse possession against Mrs. Wilson under color of title."

There is another view which seems to me to be nearly if not equally conclusive of the present case, so far as the question of color of title is concerned. It will be noted that the conveyance is not merely by certain persons claiming as heirs, but that it is by the administrators of Sarah A. Kimberly, deceased, claiming to have authority to make it (certain persons claiming to be heirs joining therein). Therefore, regardless of the points already discussed, is or is not a deed made by the administrators, even if without authority, color of title? In the case of *Shiels* v. *Lamar,* 58 *Ga.* 590, it was held: "A written agreement to divide lands owned or claimed in common, though made by the administrator of one of the tenants in common, without an order from court for the partition thereof, is admissible in evidence as color of title." In the opinion, on page 592, it is said: "Objection was made to the introduction of the agreement of 1845 to partition the land; it was admitted as color of title; and the jury finding for the plain-

tiff, Mrs. Lamar, this is one error, on the refusal of the court to grant a new trial, which was pressed in the argument before us, and on the determination of which the case, perhaps, mainly depends. The objection was that Bayard, as administrator, had no legal right to bind his sisters, as heirs at law of their deceased father with him; that he had procured no order of court to divide or partition the land with G. B. Lamar; and that the paper was void as evidence of title. . . In respect to the first objection, we hold that the paper was good as color of title, and as such that it ought to have been admitted as evidence before the jury. 33 *Ga.* 242; 19 *Ga.* 8." In the case of *Carstarphen* v. *Holt*, 96 *Ga.* 712, it is said: " Indeed, papers which would not under any circumstances be admitted to record have been distinctly held sufficient as color of title. For instance, a written agreement between tenants in common to divide land among themselves, though made by the administrator of one of the tenants in common, without an order of court for the partition, has been held to be admissible in evidence as color of title. *Shiels* v. *Lamar*, 58 *Ga.* 590. It has been held that a bond for title is admissible in evidence as color of title, and may be the basis of a prescription against any person other than the obligor in the bond. *Burdell* v. *Blain*, 66 *Ga.* 169; *Garrett* v. *Adrain*, 44 *Ga.* 274. Even so informal a conveyance as a fi. fa., with entries of levies thereon, in which levies a tract of land is described, and which is, by another entry, returned as sold by the sheriff, has been held sufficient as color of title. *Walls* v. *Smith*, 19 *Ga.* 8." Thus the decision in *Shiels* v. *Lamar*, is reaffirmed. If the conveyance by the administrators in that case in making a partition amounted to color of title, why does it not amount to color of title in the present case? This court is therefore of opinion that the deed is good as title as to the interest of Samuel M. Street (which is conceded); that if Collier reduced the property to possession during the coverture of Mrs. Prindle, it was good title as to her interest, and in any event was color of title as to her; and that it was color of title as to the interest of Waldegrave C. Street.

The only remaining question is as to whether prescription has ripened under it as to the interests in respect to which it was color of title. The plaintiffs claim that no prescription could ripen under it, because on its face it showed that Waldegrave C. Street and the

wife of Prindle were heirs of Sarah A. Kimberly, deceased; that therefore Collier took with notice, and that this prevented prescription from ripening. The deed unquestionably gave him notice that Sarah A. Kimberly had died, that the administrators were making a conveyance to him, and that certain persons, claiming an interest in the estate, were joining in the deed, doubtless to make it more perfect. But, as already stated, he could not be charged with such legal knowledge as to make the deed fraudulent on his part, and to prevent prescription from ripening. The case of *Hunt* v. *Dunn*, 74 *Ga.* 120, is cited as showing that the acceptance of this deed amounted to fraud which has prevented prescription from ripening. It may be remarked as to that decision, that, in so far as it practically followed the code, it was unquestionably good law, but as to some of its arguments it was first questioned in 81 *Ga.* 1, and afterwards disapproved in 83 *Ga.* 328. Another case cited on this subject is that of *Cowart* v. *Young*, 74 *Ga.* 694. An examination of that case will show that one person procured another to administer on an estate for the purpose of divesting the title of the heirs at law and obtaining it himself, there being no legal necessity for administration, and that he did thus obtain the title. This was a palpable fraud, and the decision was undoubtedly correct. What was said to the effect that if a person takes possession of land which he knows does not belong to him, no prescription will run in his favor, however long he may hold possession of the same, was said with reference to the facts of that case. If it be announced as a universal proposition, that one who takes possession of land knowing it does not belong to him can acquire no prescriptive title, it would seem to entirely destroy the acquisition of such a title by mere possession which is provided for under the Civil Code, § 3588. At any rate, whether or not this statement is sound, it must be actual fraud which prevents prescription; and there is none here.

Again it is urged that the conveyance by Prindle and Street as attorneys in fact for Waldegrave C. Street, and that from Prindle as to his wife's interest, were not valid in law; that Collier only acquired the title of one of the tenants in common, Samuel M. Street; that nothing has happened which would ripen prescription against the other tenants in common; and that therefore it remains as a tenancy in common. As a matter of law, one tenant in com-

mon can not, of course, convey a good title to the interest of his cotenants; but if a grantee of the whole property from him takes possession in good faith, exclusively, and not as a cotenant, and holds adversely as sole owner, it would hardly be held that he could not prescribe. In *Sewell* v. *Holland*, 61 *Ga.* 608, there was a paper in the nature of a bond for title, purporting to be executed by one tenant in common for both; so that the purchaser did not hold adversely to either until payment of purchase-money to both. In other words, the obligee in a bond for title from two does not hold adversely till both are paid. He holds under both. Payment to one might affect that one, but not the other. It is further contended, carrying forward the argument just referred to, that this deed created a cotenancy under which Collier owned a one-third undivided interest, and the ancestors of the present plaintiffs owned the other two-thirds undivided interest, and that there was no such adverse possession on the part of Collier as would create a prescriptive title as against his cotenants. The Civil Code, § 3145, declares that "There can be no adverse possession against a cotenant until actual ouster, or exclusive possession after demand, or express notice of adverse possession; in either of which events the cotenant may sue at law for his possession." This means that where two persons hold as cotenants, one can not prescribe against the other, except under those circumstances. But if one cotenant makes a deed to the whole property and the grantee takes possession and holds adversely, not as a cotenant, but as sole owner, this is such an ouster as that prescription will run. See *Horne* v. *Howell*, 46 *Ga.* 9; *Norris* v. *Dunn*, 70 *Ga.* 796; *McDowell* v. *Sutlive*, 78 *Ga.* 143 (2b), 148; *Cain* v. *Furlow*, 47 *Ga.* 674; *Shipp* v. *Wingfield* 46 *Ga.* 593, 599; Woolsey's case, 19 Hun, 273.

Collier received the deed in 1847 and duly recorded it; for many years the property was kept under fence by him, and he lived on an adjoining lot, and this lot thus became a part of the general property held by him; in order to go from his house to the public road he made a road across this land, and had a gate for entrance from the public road; he gave a portion of this land to the public authorities and allowed a public highway to be constructed through it; such use had been made of the property as it was subject to; for a number of years it was actually occupied, there being on it a house and a tenant, until it was burned down;

he had returned it for taxation and paid taxes on it; and, as it seems to the court, there was everything that was essential to ripen a prescription.     Even if it should be held that, as matter of law, the only binding conveyance made to Collier in 1847 was from a cotenant (and whether the heirs stood as cotenants in respect to an undistributed estate need not be discussed), this court would hold that prescription had ripened in Collier's favor as against the other cotenants.     From 1847 to 1902 no person has appeared upon the scene claiming the property, except Collier.     As stated, he had it for many years under fence and in occupancy, and is still using it as far as his necessities require.     The plaintiffs are not the original persons who are claimed to have been cotenants, but are descendants in the second or third generation.     " Death, who knocks with equal tread at the door of the cottage and the palace gate, has been busy with his appointed work," and not one of all those who were alive and who took part in the making of that deed in 1847 appears now to be living, except Collier, who, with whitened locks and bowed head, still remains upon the scene; his long life having occupied parts of two centuries.   To require that he should show actual notice of disclaimer of cotenancy to persons who were never considered or treated as cotenants and some of whom have been dead for nearly half a century, and whose descendants two or three degrees removed are the present claimants, would impose an almost impossible burden upon him.    That he has held a conveyance and has acted as and claimed to be the sole owner of this land for fifty years is beyond controversy; and neither the present claimants nor their ancestors during all that length of time have asserted any right to it.    This court holds that if there was originally any cotenancy by persons having interests in an undivided estate of a decedent, title by prescription has ripened and that the defendant has a perfect title, and these plaintiffs have no right or interest in the land in controversy.    There has been no abandonment by him.    The facts in the case of *Denham* v. *Holeman*, 26 *Ga.* 182, were very different.    It was there held, that, "To constitute adverse possession, it is not enough for the claimant to go on the land at intervals, cutting down trees, deadening timber, and building a cow-pen, and then abandoning for a while the premises."    *Vickery* v. *Benson*, 26 *Ga.* 582, was also cited.    There the State made a grant of lands in 1788, and in 1854 made an-

other grant; and the presumption being in favor of the State's grant, it was held that an escheat might be presumed, or at least that there was enough from which to infer it.    It was also held that abandonment would prevent one from claiming the benefit of the statute of limitations.    This is also dissimilar to the present case.    The court, therefore, directs a verdict in favor of the defendant.    As to the admission of the deed in evidence, if what has been said above is correct, nothing more need be added; but in any event it was palpably admissible.  It was conceded to convey title to at least a one-third undivided interest, and hence was properly in evidence.    Whether it was good as a conveyance or as color of title as to the other interest went rather to its effect than to its admissibility.    Indeed, to get partition at all the petitioners must show their respective interests.   Code, § 4789.

The learned judge who wrote the foregoing opinion refers to the fact that when the case came on for trial before him George W. Collier was the only survivor of the transaction which resulted in the deed of 1847.   While the case was pending in this court Collier departed this life, and therefore when this opinion is filed and this controversy is thus ended, there remains not one of the parties to the transaction which brought it about, to witness the termination of the litigation.

*Judgment affirmed.   By five Justices.*