## BROWN *v.* HUEY.

1. As against a plaintiff in an action of ejectment, who has shown title in himself, a valid prescription is not established in favor of the defendant when it appears that the latter purchased and entered upon the land in dispute, with knowledge that his vendor held solely under a bond for title made by the plaintiff, to whom a portion only of the purchase-money had been paid, and, with this knowledge, accepted from such vendor an obligation binding the latter to make title.

2. Irrespective of other questions presented in the record, this case upon its undisputed facts is controlled by the law as above laid down; and it follows as a consequence that the verdict rendered was unlawful and ought to have been set aside.

Argued December 17, 1897.—Decided March 1, 1898.

Ejectment. Before Judge Candler. DeKalb superior court. February term, 1897.

*W. F. Brown* and *W. M. Morrison*, for plaintiff.
*Candler & Thomson*, for defendant.

LITTLE, J.   From the record in the present case it appears that the plaintiff, in whom was vested title to the property in dispute, executed, on February 16, 1861, his bond for title to one Hamby, in which the plaintiff acknowledged the receipt of $250 paid him by Hamby, and obligated himself to make title to the premises now in controversy, upon the payment of two promissory notes executed by Hamby to plaintiff, each for a named amount, and due respectively December 25, 1862, and December 25, 1863.   This bond for title was, on November 11, 1863, transferred in writing by Hamby to one Wilmoth; and on January 11, 1868, Wilmoth in turn assigned the bond for title, in writing, to J. M. Huey, under whom the present defendant claims as an heir at law.   It further appears that, previously to the assignment of the bond for title to Huey, Wilmoth had, on the 24th day of December, 1867, executed and delivered to Huey the following instrument:   "Received of Joseph M. Huey twenty-five dollars in part payment of two hundred dollars for a certain tract of land which I have sold to Huey, provided he pays me the remainder, one hundred and seventy-five dollars, by the 10th day of January, 1868, at which time, if the said Huey complies on his part, I am to make him a title to said tract of land.   Should he the said Huey fail to pay the one hundred and seventy-five dollars as above stated, I am bound to return the twenty-five dollars this day paid me."   It further appears that, in pursuance of this agreement, Huey paid to Wilmoth the sum named; whereupon the latter indorsed on the bond for title from Brown, and transferred as indicated above, the following:   "I do hereby assign the within bond to Joseph M. Huey, for value received, and I bind myself to make or cause to be made to him titles for the land mentioned therein, this 11th January, 1868."   Upon the trial Wilmoth testified that at the time he assigned to Huey the bond for title, Huey knew that he, Wilmoth, was holding the land in dispute under the bond for titles of Brown to Hamby and which Hamby had transferred to him (Wilmoth).   It

further appears that Joseph M. Huey died in the year 1881, and that his widow thereupon carried the bond for title to the clerk of the superior court and caused the same to be recorded. The defendant relied upon prescription supported by possession for more than twenty years; and also possession under color of title for more than seven years.

1. We are of the opinion that, under the facts as they are presented here, no title by prescription as against the plaintiff had been acquired by the defendant, or those under whom he claimed. Possession, to be the foundation of a prescription, must be in the right of the possessor, and not of another. Civil Code, § 3584. A vendee under a bond or contract for conveyance, though placed in possession by the vendor, does not hold adversely to the latter. By the very fact of taking under a bond or contract for a deed to be thereafter executed by the vendor, a purchaser recognizes the title of his vendor and acknowledges himself as holding in subordination, and not in antagonism to it. 1 Warvelle on Vendors, 201. The possession of the vendee under bond for title is permissive merely; it is never adverse as to the maker of the bond, but the vendee is a quasi-tenant under him, so long at least as the conditions of the bond on the part of the vendee are uncomplied with. *Hines* v. *Rutherford,* 67 *Ga.* 606; *Parrott* v. *Baker,* 82 *Ga.* 373, and authorities there cited; *Allen* v. *Napier,* 75 *Ga.* 276. The possession of the vendee, with any portion of the purchase-money remaining unpaid, not being in his own right, but in the right of the vendor, there can never be such adverse possession as will ripen into a prescriptive title. *Allen* v. *Napier,* supra, and other authorities last above cited. It would shock that sense of right which must be felt equally by legislators and by judges, if a possession which was permissive and entirely consistent with the title of another, should silently bar that title. Kirk *v.* Smith, 9 Wheat. (U. S.) 241. Accordingly, in the case of *Hawkins* v. *Dearing,* 93 *Ga.* 108, it was ruled that neither the possession of one holding under a bond for titles, nor a possession derived from him by another person, is adverse to the maker of the bond, so long as any of the purchase-money remains unpaid. In the opinion pronounced in

that case, Justice Lumpkin says: "So long as Newton held possession of the land under a bond for titles from Dearing, with the purchase-money unpaid, the possession of Newton could not be adverse to Dearing or to his estate. This proposition is indisputable. It was insisted, however, that when Newton bargained a portion of the land to Hawkins, gave a bond for titles, and put the latter in possession, this act of Newton's was, as to that portion, an assertion of title in himself, and that consequently the possession of Hawkins became adverse as against the original owner of the land. We can not assent to this position. The possession of Hawkins, derived from Newton, could not, as a basis of prescription, be upon any higher or better footing than the possession of Newton himself. Hawkins was in privity with Newton, and either knew, or ought to have known, that the title to the land was not in the latter." We think the principle here announced controls the case now under review. It appears that Huey had actual knowledge that his vendor was holding under a bond for title from Brown, and indeed took a transfer of the bond itself as evidence of his claim of title. Nor does the fact that Huey's vendor, Wilmoth, testified that he paid to Brown's mother the purchase-money notes given by Hamby to Brown, alter the case. Brown testified that the notes mentioned in his bond for title had never been paid to him; that he did not trade the notes to any one, does not know where they are, and has in no way received the balance of the money due under the terms of the bond. The defendant failing to show payment to any one authorized by Brown, by indorsement or otherwise, to receive the same, and failing to trace the money claimed to have been paid into the hands of Brown, he must be treated as holding under a bond for title, with part of purchase-money remaining unpaid, and therefore prescription did not run in his favor against the obligor in such bond.

2. There were a number of other questions presented in the record. Irrespective of those questions, however, the case, upon its undisputed facts, is controlled by the law as above laid down; and it follows as a consequence that the verdict rendered was unlawful and ought to have been set aside.

*Judgment reversed: All the Justices concurring.*