TATUM, administratrix, *v.* WILSON *et al.*

No. 10335. NOVEMBER 14, 1934.

*A. J. Henderson,* for plaintiff.

*E. M. McCanless, Howell Brooke,* and *Roberts & Vandiviere,* for defendants.

RUSSELL, C. J. On November 29, 1913, H. L. Turner borrowed $5,000 from E. L. Tatum, and executed to the lender his promissory note for that amount due twelve months after date, the note reciting that it was secured by a deed to land lots 309 and 341 and other lots in the 3d district and 2d section of Cherokee County, Georgia, the note not being recorded. At the same time Turner executed to Tatum a deed, absolute on its face, conveying the land described in the note, for the consideration of $5,000. This deed was properly recorded on December 4, 1913. The deed was given to secure the note, but this did not so appear on its face. Tatum did not take possession of the property, but Turner remained in possession thereof until 1916 or 1917, when he made an agreement with J. H. Wilson to sell to him, through J. H. Darby, who furnished the money, lots 309 and 314. A deed to this land was executed by Turner to Darby, who gave to Wilson his bond for title

thereto. Wilson went into possession of the land under the bond for title, and on October 10, 1918, upon repayment Darby executed to Wilson·a deed which was duly recorded on November 22, 1918. The $5,000 note given by Turner to Tatum, on the death of the latter, passed into the hands of his administratrix. On July 15, 1930, she filed suit against Turner on the note, the petition alleging that the deed from Turner to Tatum was given to secure the $5,000 note; and this allegation was admitted by Turner. On February 17, 1933, the administratrix recovered judgment against Turner for the balance of principal, interest, and attorney's fees, due on the note, with a special lien on the land described in the deed executed November 29, 1913. Execution based on this judgment was levied on the land described in the deed and judgment, including lots 309 and 341 which had been purchased by Wilson. He filed a claim to these two lots.

At the time of his purchase of the two lots Wilson had no actual knowledge of the deed and note executed by Turner to Tatum, but about five years before the trial of the case in February, 1934, he heard that the deed was on record. He did not do anything about it. He went into possession of said lots in 1916 or 1917, and has been in possession thereof under his bond for title and deed, which possession was continuous, public, peaceable, and exclusive; and during these years he paid the taxes on the land. During this time he has made valuable improvements on the property, consisting of a house, barn, crib, other buildings, and clearing of land, of a total value of $1500 or more.

The court directed a verdict for the claimant, finding the land not subject to the execution. The plaintiff's motion for a new trial was overruled, and she excepted.

We are of the opinion that the court, in pursuance of a well-settled principle of law, correctly refused a new trial. Notwithstanding the original deed from Turner to Tatum, conveying lots 309 and 341 (with other land), to which Wilson ·interposed a claim, we are quite clear that these two lots are not subject to the levy. The court correctly directed a verdict in favor of the claimant, thus finding that at the time Wilson purchased from Darby he had no knowledge of the existence of the deed executed by Turner to Tatum; that Wilson entered into possession without fraud, in good faith; that he made substantial and valuable improvements upon

the premises; and that his possession was peaceable, open, exclusive, adverse, and continued for more than twelve years. The rule as to the establishment of title by prescription differs from that where title is sought to be established in a suit in ejectment or complaint for land, as was well pointed out in *Garrelt* v. *Adrain,* 44 *Ga.* 274, 276. As said by Judge McCay: "The very object of the law allowing title by prescription is to protect a defective title against a perfect paper one, after seven years peaceable possession. If the one who makes the bond for title is a mere squatter, a tenant, or is under a forged title, or as trustee, and the purchaser buys in good faith and goes into possession, he is in adversely. If this were not so, the title by prescription could never arise at all; since, if the person prescribing must have bought from one having a *right to sell,* he gets a good title without the prescription." In *Baxter* v. *Phillips,* 150 *Ga.* 498 (104 S. E. 196), Chief Justice Fish, after a painstaking review of many decisions of this court upon the subject, basing his decision largely upon *Garrett* v. *Adrain,* supra, and pointing out the defects in such cases as *Hawkins* v. *Dearing,* 93 *Ga.* 108 (19 S. E. 717), and *Brown* v. *Huey,* 103 *Ga.* 448 (30 S. E. 429), announced the rule in such circumstances as those involved in the present case to be: "In this State a bond for title is color of title, and the holder thereof may, through seven years adverse possession, acquire title against all persons, except his obligor, and the heirs, executors, and administrators of the latter." The fact that Wilson learned, twelve years after he entered into possession, of the execution of the deed by Turner to Tatum, is of no consequence, because when he received even this belated information he had already been in adverse possession for more than seven years. As said in *Street* v. *Collier,* 118 *Ga.* 470 (45 S. E. 294), "Only moral fraud will prevent possession under color of title from ripening into a prescriptive title." See also *Chandler* v. *Douglas,* 178 *Ga.* 11 (172 S. E. 54).

*Judgment affirmed. All the Justices concur, except* ATKINSON and HUTCHESON, JJ., who dissent on authority of the ruling in *Melson* v. *Leigh,* 159 *Ga.* 683 (126 S. E. 718); *Jay* v. *Whelchel,* 78 *Ga.* 786 (3) (3 S. E. 906); *Rucker* v. *Rucker,* 136 *Ga.* 830 (2) (72 S. E. 241); Civil Code, § 4164; 2 C. J. 134, § 230.