Urquhart *vs.* Leverett.

## URQUHART *vs.* LEVERETT.

1. A mere general objection to evidence, without specifying any ground therefor, is too vague, and does not present any point for adjudication. Such an objection was properly overruled in this case.

2. An exemplification from the district court of the United States, offered in evidence for the purpose of showing that an injunction granted by that court staying a levy upon the property of a bankrupt had been dissolved, was properly rejected, because it did not identify the property levied on, nor show under what process the levy had been made.

3. In order for the refusal of a request to charge to be a ground for new trial, the entire request must be correct; if a part be good and a part bad, the court will not be required to separate the two, but may refuse the request.

4. Where property was levied on by a sheriff under an execution from a state court, and the defendant was afterwards adjudged a bankrupt, and no proceedings were taken in the bankrupt court to compel the property levied on to be brought into that tribunal for distribution, the adjudication in bankruptcy was no excuse to the sheriff for not proceeding, and was no protection from a sale under the *fi. fa.*

(*a.*) That pending the levy and prior to the adjudication in bankruptcy the defendant conveyed the property levied on to his attorneys as fees to institute and carry through the proceedings in bankruptcy and to enable him to obtain means to procure his discharge, did not protect the land from the *fi. fa.*

5. Notice is actual when the proof, positive or presumptive, authorizes a clear and satisfactory conclusion that the purchaser had knowledge of the encumbrance, or would have had it if he had not wilfully declined to search for it.

(*a.*) The verdict in this case on the subject of notice was contrary to evidence.

January 16, 1883.

Practice in Superior Court. Evidence. New Trial. Bankruptcy. Charge of Court. Notice. Before Judge LAWSON. Jasper Superior Court. October Term, 1881.

A *fi. fa.* in favor of Roberts was levied, on behalf of Urquhart, as transferee, on certain land, and a claim was

interposed by Leverett. On the trial, the evidence showed, in brief, the following facts: The judgment was rendered in 1861. In 1869 this *fi. fa.* was levied on seventeen hundred and sixty-five acres of land as the property of John W. Wyatt. This covered all the land owned by Wyatt, and included the part now in controversy. In 1873 Wyatt went into bankruptcy. Shortly before the adjudication, he conveyed the land in dispute to Messrs. Key & Preston, his attorneys, for the purpose of paying their fees for attending to the case. They took with actual notice of the judgment. In the schedule attached to Wyatt's petition in bankruptcy, under the head of "property heretofore conveyed" for the benefit of creditors, Wyatt made the following return: "Deed to Messrs. Key & Preston and Boynton & Dismuke, my attorneys, conveying to them one hundred acres of the land returned in this schedule, to-wit: (describing the lot in controversy) $300.00." The Roberts debt was included in the schedule, and the owners of the claim were told of it. Key assigned his interest to Preston, and on January 6th, 1874, Preston conveyed the property to Leverett. A short while after his purchase, Leverett sold the land to Mrs. Freeman, and gave her a bond for title. She went into possession thereunder, and has held ever since. She has paid a portion of the purchase money. The only act of ownership shown to have been exercised by Leverett, from the time of his purchase to his sale, consisted in running off a line, etc.

Leverett denied having any notice of the judgment and *fi. fa.* now seeking to subject the land, but testified as follows: "When I bought it, I made no inquiry as to any judgments against J. W. Wyatt, but relied solely on the warranty of the Preston deed. Knew that Wyatt had gone into bankruptcy, and that Key & Preston represented him. Is a brother-in-law of Wyatt, father-in-law to Preston. Is the father of Frank Leverett, whose wife is Mary E. Leverett, a daughter of John W. Wyatt. Remembers

that the Hubbard place was levied on some years ago; knew that it was claimed by the wife of Frank Leverett; that the case was pending some time in the court; knew that the case was decided against the claim, and that the land was sold at sheriff's sale; may have been present in court when it was called for trial, or when it was sold; can't recollect; paid no attention to it; thinks he did sign the claim bond with his son, Frank Leverett, as agent for his wife, in the claim case about the Hubbard place; have no recollection of reading the bond, but merely signed it, also signed claim bond with him in case of Eunice Holland *fi. fa.*, levied on same land; never heard of this *fi. fa.* till it was levied on the land claimed; Mrs. Freeman has been in possession of the land continuously ever since she bought it from me. I never took actual possession of it myself except by the deed and by sale to Mrs. Freeman. Did not see the execution, but went and signed the bond."

The jury found the property not subject. Plaintiff in *fi. fa.* moved for a new trial, on the following among other grounds:

(1.) Because the verdict is contrary to law, evidence and the principles of equity.

(2.) Because the court admitted the record from the United States District Court, showing the bankruptcy of Wyatt, "plaintiff's counsel objecting thereto."

(3.) Because the court charged that if Leverett purchased the land without notice of the existence of this judgment and *fi. fa.*, and sold the land to another, giving bond for title and only a part of the purchase money has been paid, and if Leverett and the purchaser from him have together been in possession for four years prior to this levy, then the property should be found not subject.

(4.) Because the court refused to charge, in effect, that if Leverett sold to Mrs. Freeman, who went into possession under a bond for title and has since so remained, he

could not set up her possession to establish the four years bar.

(5.) Because the court refused to charge "that in determining whether Leverett had notice of such judgment, they should inquire whether there were any such circumstances in existence, and known to Leverett, as would put a prudent man on his inquiry; that if Leverett made no inquiry as to whether there were any liens or judgments against J. W. Wyatt, if it appear that he became security on a claim bond to a claim filed to land levied on by this *fi. fa.*, these and all such circumstances are to be considered by the jury; that, in determining whether Leverett has been in possession four years, they should not consider the possession of the purchaser under Leverett."

(6.) Because the court erred in rejecting a certified copy of a judgment in the United States court for the northern district of Georgia. [The judgment offered in evidence was as follows:

"In the District Court of the United States for the Northern District of Georgia. In Bankruptcy.

| In the matter of John W. Wyatt, Bankrupt. | Motion to dissolve injunction granted July 29th, 1873, restraining sheriff of Jasper county, Georgia, from selling 850 acres of land. Filed Oct. 26, 1878. |
|---|---|

After argument upon the within foregoing motion, it is ordered that the same be granted, and that the injunction there mentioned be dissolved. October 26, 1878."]

The motion was overruled, and plaintiff excepted.

G. T. & C. L. BARTLETT, for plaintiff in error.

KEY & PRESTON, by JACKSON & KING, for defendants.

HALL, Justice.

1. The objection to the admission of the exemplification from the bankrupt court was properly overruled by

the court below, in that it was a general objection and did not specify any ground so as to make any point or issue for adjudication.

2. The exemplification from the District Court of the United States for the Northern District of Georgia, showing that an injunction granted by that court staying a levy upon the property of John W. Wyatt, bankrupt, had been dissolved, was properly rejected because it did not identify the property levied on nor by what process the levy had been made.

3. The court did not err in refusing to charge as requested by counsel for plaintiff in execution " that in determining whether Leverett (the claimant) had notice of the judgment they should inquire whether there were any such circumstances in existence, and known to Leverett, which would put a prudent man upon inquiry; that if Leverett made no inquiry as to whether there were any liens or judgments against J. W. Wyatt; if it appear that he became security, on a claim bond to a claim filed to land levied on by this *fi. fa.*, these and all such circumstances are to be considered by the jury. That in determining whether Leverett has been in possession four years, they should not consider the possession of the purchaser from Leverett."

To entitle the plaintiff to the charge as requested, the entire charge should have stated the law correctly. If a part be good and a part bad, the court is not required to separate and distinguish between what is sound and what is unsound. In view of the facts of this case, the latter portion of this case was obviously incorrect. The purchaser from Leverett held possession under a contract from him which had not been performed, and which she was not entitled to have performed until she complied with the conditions of his bond to make her titles. Her possession was therefore his possession.

4. Among other grounds taken in the motion for a new trial were the following: That the verdict is contrary to

law and evidence, and without evidence to support it; that it is decidedly and strongly against the weight of evidence, and is against the principles of justice and equity.

It appears from the entries upon this execution that it was levied on seventeen hundred and twenty-five acres of land, in Jasper county, by the sheriff of that county, as the property of John W. Wyatt, on the 25th day of January, 1869, and from the evidence of a witness in the case, which was undisputed and uncontradicted, that this was all the land then owned by John W. Wyatt, and included that portion of the same involved in this litigation. It is also further shown that, while this levy was pending and undisposed of, the defendant, John W. Wyatt, filed his petition in bankruptcy, and that prior thereto, on the 19th day of July, 1873, he conveyed this land to Messrs. Key & Preston, his attorneys at law, to institute and carry through these proceedings in bankruptcy, and to enable him to obtain means to procure his discharge. Key sold his interests in the land to Preston, and Preston sold to the present claimant.

Although this transaction was returned in the bankrupt's schedule, the matter never went into the court of bankruptcy. It was in the hands of the sheriff of Jasper county at that time, and no proceeding was ever taken by the bankrupt court, so far as the record in this case shows, to divest him of his right or control over it. Where a levy has been made before the commencement of proceedings in bankruptcy, the possession and legal title is in the officer making the levy, for the purpose of satisfying the process in his hands, and he, as trustee, has the right to go on and sell the property, unless a sale would be injurious to the general creditors, or to some one having a prior lien. Bump on Bankruptcy, 10th ed., 217. Where property is levied on by a sheriff, under an execution from a state court, and the defendant is adjudged a bankrupt, and no proceedings are taken in the bankruptcy

court to compel the property levied on to be brought into that tribunal for distribution, the adjudication of bankruptcy and the issuing of the ordinary writ of protection is no excuse to the sheriff for not proceeding to sell the property and raise the money. 40 *Ga.*, 257. Where property was levied on before the defendant in the execution filed his petition in bankruptcy, but was sold after he was adjudged a bankrupt, it was held to be a good sale, and divested the title of the bankrupt; that no title to the property was vested in the assignee, and the purchaser at the sheriff's sale got a good title. 43 *Ga.*, 383. How far this doctrine is applicable to a mere judgment lien, where there has been no levy, we do not decide. See Bump on Bankruptcy, *ut supra.* For the reasons above given, this verdict is contrary to law, and a new trial should have been granted upon that ground. We do not decide that a bankrupt may not appropriate a part of his effects to defray the expenses of the proceeding in bankruptcy, including costs and counsel fees, but we do hold that he cannot take property for that purpose which is in the hands of the sheriff under levy.

5. Upon the question of notice of the existence of this judgment prior to and at the time of the purchase by this claimant, we are of opinion that this verdict is so decidedly and strongly against the weight of evidence, and is sustained by such slight evidence, that it should have been set aside and a new trial granted. True, this claimant swears that he never had any notice of this judgment and *fi. fa.* being against John W. Wyatt when he bought the land. But what follows shows that he did not comprehend the legal import of the term notice; on cross-examination he testified that when he bought the land he made no inquiry for judgments against John W. Wyatt, but relied solely on the warranty contained in Preston's deed, although he knew that Wyatt had gone into bankruptcy, that Key & Preston represented him. Add to this that he was closely connected with these parties, that he was

brother-in-law to Wyatt, father-in-law to Preston, father of Frank Wyatt, whose wife is a daughter of John W. Wyatt. Remembered that the Hubbard place, which was shown to be a part of the land included in the original levy of this *fi. fa.*, was levied on some years ago; knew that it was claimed by the wife of Frank Leverett; that the case was pending some time in court; knew that it was decided against the claim; that the land was sold at sheriff's sale; may have been present in court when case was called and tried or when land was sold; can't recollect; paid no attention to it; thinks he signed claim bond for his son Frank, who acted as agent for his wife in claiming Hubbard place; has no recollection of reading the bond but merely signed it; he also signed claim bond with his son in case of Eunice Holland's *fi. fa.*, levied on the same land, but never knew of this *fi.fa.* until it was levied on the land now claimed by him. Here are various circumstances, almost any one of which would have put a reasonably prudent man upon notice, but combined, it seems to us that they were sufficient to arouse the most unsuspecting who desired fair dealing between man and man to investigation and inquiry. Key & Preston, it is admitted, had notice; it is immaterial whether Mrs. Freeman, the party who has been in possession of the land since claimant's purchase, had notice or not; we have shown that her possession was claimant's possession; that claimant had notice from the circumstances above set forth, or might have had notice if he had shown the least diligence in investigating the facts which he testifies came to his knowledge, is equally certain. The notice with which these circumstances charge him was actual notice. In the language of this court, notice is actual "when the proof, positive or presumptive, authorizes the clear and satisfactory conclusion that the purchaser had knowledge of the incumbrance, or would have had it if he had not wilfully declined to search for it." 14 *Ga.*, 145, 158.

The only explanation offered for this failure to make

this investigation, was his reliance upon Preston's warranty of title to him. This, to our mind, is no explanation at all, but rather a manifestation of indifference to the consequences of the failure; it is as much as to declare that he need not take the trouble to inquire; he is at all events, safe; his warranty is his protection.

Judgment reversed.