HUNT *et al. vs.* DUNN *et al.*

1. The written title on which a possession is based, to sustain a prescription, must be neither forged nor fraudulent, if notice of the fraud or forgery be brought home to the claimant before or at the time of the commencement of his possession. If a purchaser had actual notice that he was purchasing a bad title when he took possession, his purchase was bad, and he went into possession in fraud of the rights of the true owner.

(*a.*) Whatever is notice enough to excite attention and put the party

on his guard and call for inquiry, is also notice of everything to which it is afterwards found that such inquiry might have led, although all was unknown for want of investigation; that is, where a person has sufficient information to lead him to a fact, he shall be deemed cognizant of it.

(b.) Section 2685 of the Code is designed to protect a possession held under a title acquired in good faith, and not one taken in disregard of the rights of another person, of whose title the claimant had been informed, and about which, with proper inquiry, he might have had full knowledge.

2. This court has held that a possession originating in fraud cannot be tacked to one subsequently acquired, in order to complete the term of years necessary to give the tenant title by prescription, though such tenant be an innocent purchaser from the fraudulent grantor.

3. The newly discovered evidence relied on and set out in the affidavits accompanying the motion for a new trial was merely cumulative, and was properly disregarded by the court below; and the reception of an affidavit contradicting it, after the motion had been argued and before the judgment had been rendered, need not be considered.

September 9, 1884.

Title. Prescription. Fraud. Notice. Before Judge BROWN. Pickens Superior Court. May Term. 1884.

Hunt *et al.* brought ejectment against Dunn *et al.*, demises being laid in the name of Hunt, the drawer of the lot, down to Lyle *et al.*, the real plaintiffs. Both the plaintiffs and defendants claimed by chain of title under the drawer of the lot, the title of plaintiffs being the older. Defendants set up prescription by adverse possession for more than seven years. In reply to this, plaintiffs insisted that in order to make out the title by prescription, it was necessary to tack to their own possession that of their predecessors in the title, whose possession was fraudulent, because they took with notice of the superior outstanding title of James Lyle, who was the ancestor of plaintiffs, under whom they claimed by inheritance.

The jury found for the defendants. Plaintiffs moved for a new trial, one ground of the motion being that the ver-

dict was contrary to law and evidence. The motion was overruled, and plaintiffs excepted.

F. C. Tate; C. D. Phillips, for plaintiffs in error

W. H. Simmons; W. T. Day, for defendants.

Hall, Justice.

Both parties to this suit claim under title purporting to emanate from the drawer of the lot of land in question; the plaintiffs' title is the older of the two, and was admitted to record before the defendants'. Two of defendants' feoffors, Thompson and Cross, purchased the land in 1868, some years after plaintiffs' title was registered, and took immediate possession of it. Thompson sold and conveyed his interest therein to Cross, on 25th of April, 1870, who remained in possession of the entire tract until May, 1876, when he sold and conveyed it to Sylvanus Moss and Anderson Moss. Sylvanus sold his interest to Anderson Moss in 1877, who had the possession until the land was sold and conveyed to Dunn, the tenant in possession and defendant in the suit, on the 9th day of January, 1877, and he remained in possession until the commencement of the present suit, on the tenth day of January, 1882.

The defence set up was seven years' adverse, continuous possession by the defendant and his feoffers under color of title. It was admitted by the plaintffs that the tenant in possession and those under whom he claimed had been in the uninterrupted and continuous possession of the land for more than seven years prior to the commencement of the suit; but they denied that the possession was adverse, and insisted that the possession and title of Thompson and Cross was fraudulent; that they had notice of plaintiffs' title before and at the commencement of their possession; that one of their immediate feoffors had notice of this title before they purchased and took possession; that without tacking defendant's possession to that of Thompson and

Cross he had not been in possession the requisite period to give title by prescription " under written evidence of title." Thompson and Sylvanus Moss were both sworn on the trial; the former testified that Cross lived near the lot of land, about one mile from it, when Lyle, the ancestor of plaintiffs' lessors, moved to Alabama, which was shown to have been in 1856; heard Cross, his co-tenant, say that Lyle claimed the lot as his, about the time they bought it from Dodson; said Lyle's title was a quit-claim; they went into possession the next day after they bought it. Dodson showed him his title; thought it good, or he would not have bought the land.

Sylvanus Moss swore that, after Cross and Thompson bought the land, he leased it from them; heard Cross talk about Lyle's title before he leased it in 1868, a good many times; " he said that Lyle's title was a quit-claim, for some one looked at it, and that his, Cross's, title was the best one; certainly Cross knew that Lyle had a title to the land before Cross bought the land. Lyle's title had been examined, and his deed was a quit-claim; he often talked to witness about Lyle's title before he bought; Cross said he believed the title he bought was a better title than Lyle's, and that he got a good title." This was the defendant's evidence, and was all that bore directly upon the only question between the parties on the trial. The verdict was for the defendant. A motion was made for a new trial upon various grounds, among others, because there was no evidence to support the verdict, which motion was overruled and the new trial refused.

1. It is unquestionably true that the written title on which a possession is based, to sustain a prescription, must be neither forged nor fraudulent, if " notice " of the fraud or forgery " be brought home to the claimant before or at the commencement of his possession." Code, §2683.

The question here is, did Thompson and Cross have actual notice that they were purchasing a bad title when they took possession? If they did, then their purchase was bad,

and they went into possession in fraud of the rights of the true owner.   44 *Ga.*, 573;  51 *Id.*, 139.   In the last cited case, it is held that if the claimant, when he went into possession of the property, had knowledge that his written evidence of title was fraudulent, or if notice thereof was brought home to him at the commencement of his posses- sion or before, then he cannot found a prescriptive right upon such title.   That which puts a party upon inquiry is actual notice, as has been frequently held by this court. In *Jordan vs. Pollock*, 14 *Ga.*, 157, it is said, " that notice is sufficiently actual, which, by the proof, either positive or presumptive, brings home to the purchaser such knowl- edge of the circumstances as authorizes the clear and satis- factory conclusion that he had notice of the prior incum- brance, or such as renders proper the conclusion that *he was, or should have been, put upon inquiry*" (italics ours); " that such notice is, in the language of Sir Edward Sug- den, ' good notice,' and is so, because it authorizes a con- clusion which affects the conscience of the purchaser, and makes it a legal fraud in him to buy under the circum- stances."   If, under such notice, he afterwards buys, "*mala fides* marks the transaction."   See also 69 *Ga.*, 92, 98, 99, 100, which is in point, if not all-fours, with the present case.   *Johnson vs. Dooly et al.*, 72 *Ga.*, 297.

This doctrine is, in a great measure, taken from Jones *vs.* Smith, 1 Hare, 55, which was affirmed on appeal.  1 Phil- lips, 244.   The conclusion deduced from all the English authorities by an eminent commentator is, that the prin- ciple is well established, " that whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is also notice of everything to which it is af- terwards found that such inquiry might have led, although all was unknown for want of the investigation; that is, where a person has sufficient information to lead him to a fact, he shall be deemed cognizant of it."   2 Spence Eq. Jur., 757, and cases cited in notes (b) and (c) there.

The section of our own Code under consideration was

Hunt *et al. vs.* Dunn *et al.*

designed to protect a possession held under a title acquired in good faith, and not one taken in disregard of the rights of another person of whose title the claimant had been informed, and about which, with proper inquiry, he might have had full knowledge, if he had made the requisite effort to inform himself.

2. This court has carried this principle so far as to hold that a possession originating in fraud cannot be tacked to one subsequently acquired, in order to complete the term of years necessary to give the tenant title by prescription, though such tenant be an innocent purchaser from the fraudulent grantor.   63 *Ga.*, 360.

As before intimated, Thompson and Cross, nor either of them, seem to have taken and held possession under a title free from fraud; and without tacking to their possession that of subsequent occupants and feoffees, a sufficient time had not elapsed to confer title by prescription under written evidence of title upon the defendant in this suit.

We can discover no evidence in this record conflicting with that which fixes bad faith upon the parties who first took the possession under their claim of title, and for that reason, we think a new trial should have been granted.

3. The newly discovered evidence relied on, and set out in the affidavits accompanying the motion for a new trial, was merely cumulative, and was properly disregarded by the lower court; and this renders it altogether unnecessary to consider the question raised as to the receipt by the court of the affidavit contradicting the former, after the motion had been argued and before the judgment had been rendered thereon.

Judgment reversed.