85   603
e126  41

### BROWN & SON *v.* POWELL.

Where the tax-receiver or collector placed upon the wild land digest improved land which had been cultivated and occupied for thirty years, and upon which taxes had been paid by the owner every year until 1882, and every year since that time, but he having neglected to return it for that year, the tax-collector assessed it as wild land, and it was sold as such under execution, such sale was illegal and void, and the purchaser thereat could not recover the land from the owner.

   June 2, 1890.

Ejectment. Title. Taxation. Before Judge BOWER. Decatur superior court. November term, 1889.

Reported in the decision.

D. A. RUSSELL, by J. H. LUMPKIN, for plaintiffs.

M. O'NEAL and DONALSON & HAWES, by brief, for defendant.

SIMMONS, Justice.

The land in controversy in this case was listed and assessed by the tax-collector of Decatur county as wild land. He issued execution against the same as wild land, and it was sold by the sheriff as wild land, and was purchased at the sheriff's sale by the plaintiffs in error. Two years having expired for its redemption by the owner thereof, the purchasers, Brown & Son, commenced their action of ejectment for its recovery. Powell, the defendant, defended upon the ground that the sale was illegal and void, because the land was not wild but improved land, and he had been in possession thereof, cultivating it, since 1853, paying taxes on it every year up to the year 1882, when he neglected to

return the same for taxes, and it was assessed by the tax-collector for that year as wild land, and sold as aforesaid. So the main question in this case is: When land, occupied and improved, is listed and assessed by the tax-collector as wild, and sold by the sheriff as wild land, is such sale valid, and can the purchaser under said sale oust the owner? The trial judge held that the purchasers at said sale were not entitled to recover, and we think he was right. Sections 937, 938, 939 of the code give to the comptroller-general "authority to make all needful rules and regulations for the government of tax-collectors and receivers, and any other rules that may be necessary to insure the prompt and faithful execution of the tax laws, if not in violation of or inconsistent therewith. These rules, when made, shall be entered in a book in his office, kept for that purpose, and be binding upon all successors until amended or repealed, copies of which shall be printed and furnished to receivers and collectors at the time of sending them the forms required. They shall also be printed during the month of March every year, in a public gazette published at the seat of government, if in the discretion of the comptroller he shall deem it beneficial." Under this authority, the comptroller-general, as early as 1876, published the following rule and sent the same to the tax-collectors and receivers: "Lands in this State are divided into two classes, *improved* or farming lands, and *wild* or unimproved lands, and in receiving the returns of them, you must be careful to keep each separate, and to enter same on the respective digests furnished you from this office. The returns of improved lands must be entered on your general digest of the taxable property of your county, and the return of wild lands on the wild land digest. . . . The sections of code referred to have a general application to improved lands, but are also applicable to wild lands in so far as they relate to the

manner of describing such lands when returned for taxation." It seems, therefore, that the practice of the taxing department of the government, and the construction put by that department upon the various tax acts, is that there shall be two digests made by the tax receiver: one in which he places all the improved lands and all other property of the tax-payer except his wild lands, which is called the general digest; another in which are entered all the wild lands, called the wild land digest. Different rules prevail in returning improved lands and wild lands for taxation; different rules, under the statute, in selling improved lands and wild lands for non-payment of taxes on the same; and different rules as to the time of redemption, and the amount of interest which the owner is required to pay in order to redeem; and there are other differences which it is unnecessary to mention here. So it seems that the policy of the State is to keep improved and wild lands separate in its scheme of taxation. It divides them into two classes, improved and wild, and requires that they shall be thus returned or listed for taxation. This is done, we suppose, for the protection of the State and the land-owner. Improved lands are generally more valuable than wild, and yield a greater income in the way of taxation. Whatever may be the reason of the policy, it is sufficient to say that it is the law, and must be complied with until changed. Black, in his work on Tax Titles (§39, p. 53), says: "The provisions of any statute requiring lands to be thus classified and assessed for taxation are, in general, imperative, and their observance jurisdictional." We think, therefore, where the tax-receiver or collector places upon the wild land digest improved lands which have been occupied and cultivated for more than thirty years, and upon which taxes had been paid by the owner every year until 1882, and every year since that time, and exe-

cution is issued against it as wild land, and the sheriff sells it as such, that the sale is illegal and void, and the purchasers at the sheriff's sale cannot recover the same from the true owner. Blackwell on Tax Titles (vol. I, §251) says: "It may be laid down as a general rule that wherever a confusion of these different classes takes place, and the requirements of the statute are disregarded by the officers charged with the duty of listing the land, the proceeding will be illegal and void. Where lands which are resident property are put down with non-resident lands on the roll, the sale will not stand. The provisions in regard to the grouping of lands are imperative. The owner may be misled by failure to comply with the law. An assessment of land as non-resident that should be assessed as resident avoids the sale." See, also, Lunt *v.* Wormell, 19 Me. 100; Hanscom *v.* Hinman, 30 Mich. 420; Perley *v.* Stanley, 59 N. H. 588; Ritter *v.* Worth, 58 N. Y. 627; Hathaway *v.* Elsbree, 54 Pa. St. 498; Milliken *v.* Benedict, 8 Pa. St. 169. There seems to be a strong intimation against this view in the case of *Gardner* v. *Donalson*, 80 *Ga.* 71, but the question was not fully decided in that case, and was postponed for a final decision on the trial of the bill. After a thorough investigation of the whole subject, we are satisfied that the present ruling is right. It is certainly more in consonance with equity and justice.          *Judgment affirmed.*