## WOODWARD *v.* McDONALD.

Where a rule is issued against a levying officer, calling upon him to show cause why he has not brought to sale property levied on by him under an execution issuing from a court of this State, it is incumbent upon him to make it affirmatively to appear that he parted with possession of the property levied on in obedience to the mandate of a court of competent jurisdiction which he was bound to respect, or that the process placed in his hands could not legally have been enforced by him.

Argued November 19, — Decided December 12, 1902.

Money rule.   Before Judge Reagan.   Henry superior court. April 25, 1902.

*J. F. Wall,* for plaintiff in error.   *J. S. Gleaton,* contra.

FISH, J.   At the instance of C. D. McDonald, a rule was issued against N. W. Woodward, as constable of the 498th district, G. M., of Henry county, calling upon him to show cause why the money had not been made on two executions in favor of McDonald, which had been placed in his hands for enforcement.   An answer was filed by Woodward, in which he set up the following matters of defense:   Both of these executions were duly levied on four bales of cotton as the property of the defendant in fi. fa., and the cotton was advertised for sale on the first Friday in November, 1901, which was the earliest day upon which it could legally have been sold.   Some time prior to that date, the attorney of the defendant in fi. fa. served upon the constable written notice to the effect that

there was pending in the United States district court for the northern district of Georgia a proceeding in bankruptcy which had been instituted against his client, and that therefore that court had exclusive jurisdiction over his estate.   The attorney who served this notice also stated to the constable " that if he sold said cotton, that he would apply to Hon. Clifford W. Walker, referee in bankruptcy, and ask him to call upon [the constable] to show cause why he should not be committed to jail for contempt of said bankrupt court."   Thereafter, but before the day of sale, " he was served with the following notice, viz. : In the District Court of the United States for the Northern District of Georgia.   In the matter of Thomas L. Sutton, Bankrupt, in Bankruptcy.   It being shown to the Court that N. W. Woodward, L. C., of Henry County, Georgia, is in possession of a certain lot of baled cotton belonging to the estate of the Bankrupt stated, upon which he has levied : It is therefore ordered that said cotton be delivered to J. Blalock, Esq., the duly appointed Trustee of said Bankrupt, forthwith. It is further ordered that a copy of this order be served upon said N. W. Woodward, L. C., as aforesaid.   Given under my official hand, at Monroe, Ga., Oct. 29th, 1901.   [Signed] Cliff. W. Walker, Referee in Bankruptcy."   Before the cotton was levied on, one Thrasher, "in obedience and answer to a summons of garnishment sued out and made returnable to the justice's court of said 498th district, had delivered to" the justice of that court the warehouse receipts for the four bales of cotton which had been subsequently levied on ; and the constable, in compliance with the terms of the above-quoted order which had been served on him, " and by the advice and directions of said " justice, delivered these cotton receipts to Blalock, as trustee in bankruptcy of the defendant in fi. fa. There was no other property belonging to the defendant in fi. fa., upon which the executions placed in the hands of the constable could have been levied ; and " for the above and foregoing reasons he has failed to make the money due " thereon.

A hearing of the case was had in the superior court, and the judge passed an order making the rule against the constable absolute, on the ground that he had "failed to show any lawful cause why he had not made the money on said fi. fas."   To this judgment exception was taken.   We are of the opinion that it should be affirmed.   There having been no traverse filed to the answer of

the constable, the recitals of fact therein contained should, of course, have been accepted as true. *Haynes* v. *Perry*, 76 *Ga.* 33. But it is to be noted that the respondent does not in his answer undertake to affirmatively allege that any proceeding in bankruptcy against the defendant in fi. fa. was, in point of fact, pending at the time the attorney of the latter gave written notice to that effect, or when service was made of the order purporting to have been passed by Walker, as referee in bankruptcy. Nor is there any allegation that any such proceeding had been referred to Walker, as such referee; that the defendant in fi. fa. had been adjudicated a bankrupt, or that Blalock was, as recited in the order, his duly appointed trustee in bankruptcy. On the contrary, it is simply alleged in the answer filed by the constable that he received the above-mentioned written notice, which was accompanied by a verbal threat on the part of the attorney who served it, and was also served with a paper, a copy of which is set forth, upon which he, with the advice and at the direction of a justice of the peace, assumed to act, without himself having any knowledge concerning the truth of the recitals of fact embraced in either the written notice or in that paper. Certain it is that the justice was without jurisdiction to give to the constable any directions in the premises, and that the latter can claim no immunity because of the fact that he was advised by the justice, as a mere counselor, to obey the mandate contained in this unauthenticated order of a person assuming to act in the capacity of a referee in bankruptcy. See, in this connection, *Treadwell* v. *Beauchamp*, 82 *Ga.* 736. So the real question presented for our determination is: Was the constable warranted in taking for granted that the defendant in fi. fa. had been declared a bankrupt; that his estate was in the hands of Blalock as his duly appointed trustee; that Walker was the referee to whom the proceeding in bankruptcy had been referred; and that he, as such referee, had jurisdiction to pass an ex parte order such as that purporting to have been signed by him, and thus require the constable to surrender to Blalock, as trustee of the bankrupt, possession of the cotton which had been levied on?

Clearly, the trial judge could not be expected to take judicial cognizance of the pendency of proceedings in bankruptcy instituted against the defendant in fi. fa., or of the action taken by the Federal court in regard thereto. Nor can the order set forth in the

answer of the constable properly be treated as affording the requisite evidence of the facts therein recited. But even upon the assumption that Walker was, as matter of fact, the referee to whom such a proceeding had been referred, and that he passed the order which was served upon the constable, it still remains true that his answer fails to show a state of facts authorizing the rule issued against him to be discharged. Such an order has none of the sanctity which attaches to a judgment rendered by a court of general jurisdiction. Indeed, it must be analogized to the judgment of an inferior judicatory which does not on its face show the requisite jurisdictional facts upon which it was based. Under section 38 of the bankrupt act of 1898, a referee has jurisdiction to "exercise the powers of the judge for the taking possession . . of the property of the bankrupt [only] in the event of the issuance by the clerk of a certificate showing the absence of a judge from the judicial district, or the division of the district, or his sickness, or inability to act." Whether the judge himself has jurisdiction, by way of summary process, to compel an officer of a State court to surrender possession of property belonging to the estate of a bankrupt, is a matter of grave doubt, and one concerning which there is a wide diversity of judicial opinion. See, on the one hand, In re Brown, 91 Fed. Rep. 358; In re Francis-Valentine Co., 93 Id. 953; 94 Id. 793; In re Fellerath, 95 Id. 121; contra, In re Abraham, 93 Fed. Rep. 767; In re Franks, 95 Id. 635; Southern Loan & Trust Co. v. Benbow, 96 Id. 514. Be this as it may, a mere referee in bankruptcy has no power whatever in the premises, save "in the event of the issuance by the clerk of a certificate" such as is provided for by the bankrupt act. The answer of the constable failed altogether to allege that Walker, as referee, based his action upon the issuance of a certificate of this character. The order signed in his name, as referee, makes no recital as to the authority under which he assumed to issue this most extraordinary summary process — an ex parte order of a most extraordinarily mandatory character. How, then, could the judge of the court below reach the conclusion that the constable obeyed, as it was his duty to do, process duly and regularly issued by a court of competent jurisdiction? The mere fact that a levying officer who has failed to realize money under a levy made by him "acted honestly and in good faith, and intended no disobedience of the precept of the court" to

which he was amenable, can constitute no legal excuse for his failure to perform his official duty. *Gladden* v. *Cobb*, 73 *Ga.* 235. This court, in *Sharman* v. *Howell*, 40 *Ga.* 257, held that: "Where property is levied on by a sheriff under an execution from a State court, and the defendant is adjudged a bankrupt, and no proceedings are taken in the bankruptcy court to compel the property levied on to be brought into that tribunal for distribution, the adjudication of bankruptcy and the issuing of the ordinary writ of protection is no excuse to the sheriff for not proceeding to sell the property and raise the money." And this decision was subsequently followed in *Wheeler* v. *Redding*, 55 *Ga.* 87, and in *Urquhart* v. *Leverett*, 69 *Ga.* 92. In view of these rulings, it was incumbent upon the constable to show that he parted with the possession of the cotton levied on in obedience to legal process which he was bound to respect, or to at least show that, upon proper demand made by a duly appointed trustee of a bankrupt, who was entitled to enforce a surrender of the cotton, possession thereof was voluntarily yielded to him. As the constable did neither, we are constrained to hold that the trial court did not err in making the rule against him absolute.

It is to be observed that while the bankrupt act of 1867, with regard to which the cases last above cited were decided, provided merely that mesne process against the property of a bankrupt should be dissolved, if sought to be enforced within four months next preceding the commencement of bankruptcy proceedings, the act of 1898 (§ 67*f*) declares that "all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt." If the effect of this provision in the later act is to render void a levy made under final process issued upon a judgment obtained in a State court within four months prior to the commencement of bankruptcy proceedings, it would seem illogical to hold it to be the duty of the levying officer to bring to sale the property levied on, since the process he was called upon to execute would itself no longer be operative. Accordingly, if the officer voluntarily surrendered possession of the property to the trustee in bankruptcy, he could hardly be said to be in contempt of the State court, or liable to the plaintiff in fi. fa., for not enforcing its thus nullified process. We are

not, however, for the reasons above stated, now called upon to make any definite ruling in regard to the effect of the provision in the bankrupt act of 1898 to which we have just directed attention.

*Judgment affirmed.   All the Justices concurring, except Lumpkin, P. J., absent.*