## SOUTHERN BANKING & TRUST COMPANY *v.* WILCOX LUMBER COMPANY.

119  519
122  261

119  519
126   41

1. Under the act approved February 28, 1874 (Acts 1874, p. 105), the comptroller-general was authorized only to issue a tax fi. fa. against unimproved or wild land. A sale of improved land as wild land under such execution would convey no title.

2. Whether the land was to be taxed as wild or improved depended altogether on the appearance it presented to the eye, it being immaterial by whom the improvement had been made.

3. Wherever there appeared to be such improvements as indicated that there was some one personally responsible for taxes, it was necessary to return and tax the same as improved property, and the comptroller was not bound to inquire how the improver held the property — whether by title perfect or imperfect, or by no title at all.

Argued January 26, — Decided February 13, 1904.

Trespass. Before Judge Roberts. Wilcox superior court. March 17, 1903.

The plaintiff relied on a deed under a tax sale by virtue of a tax fi. fa. issued by the comptroller-general, for taxes for 1875, against the land in controversy, as wild land. The defendant attacked the validity of the sale, on the ground that the land had been improved prior to 1875. Dowdy, one of the defendant's grantors and warrantors testified that he made improvements on this lot about 1871, 1872, 1873, 1874, and 1875. "I put a patch on it of about an acre and a half, and put a house on it. I do not recollect the year, but it was about thirty-three years ago, making it about 1870, that I first made improvements. I moved a woman into the house, and she and her children worked. That was just after I built the house. The patch was fenced, and a well dug. In the fall of the year I took in about an acre and fenced it and sowed it. About two years after, I put in an acre peach orchard on it and fenced it. All these improvements on it were prior to 1873. I built another house about sixteen years ago, and I have kept clearing and improving since. Possession has been continuous since." Other witnesses testified to the same facts substantially, as to the time and as to the character of the improvements made. One of the witnesses for the plaintiff testified that the improvements mentioned by Dowdy had been made before the year 1875.

*A. C. Pate, Eldridge Cutts,* and *Hal Lawson,* for plaintiff.
*Whipple & McKenzie,* for defendant.

LAMAR, J. (after stating the foregoing facts).    In trespass to try title, the validity of an essential link in plaintiff's chain depended upon the question as to whether the comptroller-general, under the act of 1874 (Acts 1874, p. 105), had the right to sell the property as wild land.    There was evidence that there had been some improvements placed on the property prior to 1875. The plaintiff insisted that this work had been done by a mere trespasser, and that in legal effect the land remained wild, and could be sold as such by the comptroller.    He excepts to the contrary ruling.    Under the act the comptroller was authorized only to issue tax fi. fas. against unimproved or wild lands.    If the property was in fact improved, he had no right to issue execution against it, and a sale thereunder would convey no title.    *Hutchins* v. *Tenant,* 73 *Ga.* 96.    In that case about six acres had been cleared and fenced in 1874.    The fi. fa. was for taxes alleged to be due on a land lot for 1874 and 1875, and there, as here, an effort was made to show that as the person in possession was a trespasser, his wrongful act could not make domestic the wild land. The court, however, refused to permit such testimony, holding that the sale was void and conveyed no title to the purchaser.    The decision is in accord with the ruling in other States under statutes in reference to the sale of unoccupied or unseated lands.    In Biddle *v.* Noble, 68 Pa. St. 289, it was held that an entry upon an unseated tract of land by any one, whether as an intruder or under the title of the owner, either for purchase or residence or for cultivation, makes the tract seated.    The cultivation of several acres fixes the denomination of the whole, and charges the person of the cultivator so as to render a sale for taxes illegal. And again in Stoetzel *v.* Jackson, 105 Pa. St. 562, 567, it was held that "land may be seated as well by an intruder as by an owner, and whether it is to be taxed as seated or unseated depends altogether on the appearance it presents to the eye of the assessor.    Where there appears to be such a permanent improvement as indicates a personal responsibility for taxes, the land should be returned and taxed as seated.    It is not the business of the assessor to inquire how the improver holds the property, whether by title perfect or imperfect, or by no title at all.    For

the question is but how the taxes shall be collected; if seated, then from some person; but if unseated, from the land itself."

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*