UNITED STATES v. ONE LOT OF LAND FOR BAINBRIDGE POST OFFICE et al.

(District Court, S. D. Georgia, S. W. D. March 14, 1910.)

1. ADVERSE POSSESSION (§ 71*)—COLOR OF TITLE—FRAUD.

Where one in possession of land under color of title believes in good faith, without moral fraud, that his title is good, such possession for the statutory period, according to the Georgia law, is sufficient to confer an absolute title by adverse possession though the color of title is in fact invalid; mere legal fraud, in that he knew, or should have known, that a decree in his chain of title was invalid, being insufficient.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 415–429; Dec. Dig. § 71.*]

2. COURTS (§ 367*)—FEDERAL COURTS—RULES OF DECISION.

In a condemnation proceeding in the federal court to acquire title to land in Georgia, whether certain claimants of the fund had title to the land by adverse possession under color of title depended on the law of the state and was not a question concerning which the court could form an independent judgment.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. § 367.*

State laws as rules of decisions in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

Condemnation proceedings by the United States of America against One Lot of Land for Bainbridge Post Office and others. On proceedings for the distribution of the agreed value of the land. Judgment awarding the proceeds to Byron B. Bower, Sr., and others.

Alexander Akerman, Asst. U. S. Atty.
Hawes & Pottle, for the Bower claimants.
Pope & Bennet, for the Powell claimants.

SPEER, District Judge. The question before the court is a controversy over the distribution of a fund to be paid by the government

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for the site of the post office building in Bainbridge, Ga. The lot has been purchased from Byron B. Bower and others, who are in possession. Upon investigation of the title, it appeared that a claim adversely to the vendors would be made to one-half of the purchase price agreed upon. The adverse claimants are the legatees under the will of B. F. Powell, deceased. In order to quiet the title, the government has instituted condemnation proceedings, and made service upon all of the claimants. These came in and filed their answers, consented to the condemnation at the agreed price of $7,500, and prayed that this sum be paid to them in the proportion as their interests might respectively appear.

Upon the call of the case for trial, the following consent decree was entered:

"This cause coming on to be heard upon the petition and rule nisi heretofore granted, and the answer of Byron B. Bower, Sr., individually, and as trustee for his children, Byron B. Bower, Jr., E. V. Bower. G. G. Bower, D. R. Bower, J. D. Bower, and L. C. Bower, and each of said children individually, and upon the answer of Kansas N. Mills, Fannie M. Priestly, Willie B. Powell, and Bartow F. Powell, it is ordered and adjudged by the court, all of the said parties consenting thereto, that the value of the premises in dispute, to wit [describing the property], be and the same is hereby decreed and adjudged to be the sum of $7,500.00.

"It is further ordered and adjudged, all of said parties consenting thereto in open court, that all question as to the claim of title between the respective defendants be determined by the court without the intervention of a jury, and that the court may enter a decree fixing and vesting the title to the said property in the defendants, or either of them, and directing that the United States of America pay over said sum of money, to wit, seven thousand five hundred dollars ($7,500.00), to the defendants in whom the title is thus decreed to be vested, in such proportions as may be fixed by said decree. That upon the payment by the United States of America of said sum of money to the parties decreed by the court to be entitled thereto that the title to the aforesaid premises shall be vested in the United States of America, free and clear from all right, and claim of any and all of said defendants.

"In open court this February 11, 1910.

"Emory Speer, United States Judge.

"We consent to the foregoing decree:

"[Signed by counsel for all parties]."

This having been done, the parties to the controversy each offered evidence in support of the conflicting titles. The Bower claimants having been found in possession, it was conceded that the Powell claimants must assume the burden of proof. These claimants based their claim of title upon the will of their father, B. F. Powell, dated September 17, 1869, devising all of his property, real and personal, to them. It did not appear that these claimants had inheritable blood, and their reliance was solely upon the will.

The next introduced was a certified copy of a deed made by H. B. Waugh, sheriff, to B. F. Powell, the testator aforesaid. This deed was dated January 1, 1870, and conveyed a half interest to the lot in dispute. The deed recited that this interest had been levied upon and sold as the property of one Moses Singleton under an execution issued upon the foreclosure of a mortgage to the interest made in favor of B. F. Powell by said Moses Singleton. A regular chain of title was shown from the state of Georgia to a partnership, Tuggle & Singleton, composed of Thomas S. Tuggle and Moses Singleton. The last

link in this chain was a deed from John Harrell, W. W. Harrell, and J. T. Wimberly to the partnership aforesaid, and was dated October 8, 1863.

Now, the parties in possession, who for the sake of convenience we may term the "Bower claimants," exhibited in evidence a regular chain of title from Thomas S. Tuggle to themselves. This Tuggle, it will be observed, was one of the firm of Tuggle & Singleton above mentioned. They also introduced a decree of the superior court of Decatur county, Ga., rendered at the May term, 1874. This was entered in the case of Thomas S. Tuggle v. O. G. Gurley, administrator of Moses Singleton, deceased, William Powell, administrator of B. F. Powell, the testator above mentioned, Robert G. Hall, Wiley Pearce, and Henry C. Singleton. This appears to have been a consent verdict and decree. The original bill in equity, upon which it was entered, was brought by Tuggle against Singleton on March 5, 1867. It asked for the appointment of a receiver, and for an accounting between the partners. It was alleged therein that Tuggle and Singleton had entered into a partnership in 1863 for the purpose of conducting a livery stable business in Bainbridge; that Tuggle resided in Columbus, Ga., had advanced nearly all of the money; that Singleton operated the property, and failed and refused to account to Tuggle for any of the profits or proceeds of the business. Upon this bill, as appears from a certified copy from the minutes of the superior court of Decatur county, an interlocutory order was made for the appointment of John P. Dickinson as receiver. This was done at the April term, 1869. The consent decree, above mentioned, was rendered at the May term, 1874. It contained the following clause:·

"We also find that the mortgage made by Moses Singleton to B. F. Powell on the 31st day of October, 1866, so far as the mortgage relates to the real estate hereinbefore described, was unauthorized and void at the time it was made and is now void, and all sales under and by virtue of any judgment obtained upon the same, so far as said judgment and sales relate to the real estate hereinbefore described, are void and passed no title."

The Powell claimants objected to the introduction of the decree as evidence upon the ground that B. F. Powell was not a party defendant to the original bill, nor made a defendant by any of the amendments which had been introduced in evidence; and on the further ground that the administrator had no right to consent to the decree had he been served. The Bower claimants sought to meet this objection by showing by the oral testimony of B. B. Bower, Sr., that in 1873 he was of counsel for Thomas S. Tuggle, had prepared and filed an amendment to the original bill, in which amendment Powell's administrator cum testamento annexo was made a party defendant, as were others who claimed liens upon this lot, but the amendment had been lost, and had never been recorded.

It was also shown by testimony in parol that Moses Singleton had purchased a house and lot from B. F. Powell for the sum of $8,000; that he bought the same on credit, and, in order to secure the payment, he gave a mortgage to Powell on the house and lot purchased from him, and also included in the mortgage his undivided half inter-

est in the stable lot of Tuggle & Singleton, here in controversy. Singleton failed to pay the $8,000. Powell foreclosed his mortgage, levied upon both properties, had them sold at sheriff's sale, bought them in, and took the sheriff's deed above mentioned. This proceeding was attacked by the Bower claimants upon the ground that the property was in the hands of the receiver of the superior court, and that the levy of the sheriff and the sale thereof without permission or authority from the court was null and void.

It further appears that after the consent decree in 1874 Tuggle went into possession of the stable—that is, the lot in controversy, and remained in open, notorious possession until his death in 1893—that his widow and one son conveyed their interest in this lot to Thomas W. Tuggle on July 6, 1894; that Thomas W. Tuggle conveyed to A. L. Townsend and G. F. Westmoreland on October 7, 1898, for a valuable consideration. It appears from the oral testimony that Townsend & Westmoreland entered immediately into possession of the property, and occupied a building thereon as a law office. On October 21, 1899, A. L. Townsend conveyed his half interest to B. B. Bower, Sr., and on September 14, 1900, Westmoreland conveyed his half interest to the children of B. B. Bower, Sr., and on December 22, 1899, B. B. Bower, Sr., conveyed his half interest to his children, who are the Bower claimants here. The testimony is undisputed that the Bower claimants have been in the open, notorious, peaceable, and uninterrupted possession of the property since September 14, 1900. The evidence is also undisputed that the Powell claimants have never been in possession, have never paid any taxes on it either to the city, the county, or the state, while the Bower claimants, and those under whom they claim, have since 1873 been in possession, and have been paying the taxes. The will of B. F. Powell was dated September 17, 1869. All of the Powell claimants are mentioned in that will. The youngest of them, therefore, must be at this time more than 40 years of age.

The law of Georgia governing this controversy is found in the Civil Code of 1895. This provides:

"Sec. 3588. Actual adverse possession of lands by itself, for twenty years, shall give good title by prescription against every one, except the state, or persons laboring under the disabilities hereinafter specified:

"Sec. 3589. Adverse possession of lands, under written evidence of title, for seven years, shall give a like title by prescription. But if such written title be forged or fraudulent, and notice thereof be brought home to the claimant before or at the time of the commencement of his possession, no prescription can be based thereon."

There is no question as to the actual possession of the Bower claimants at least for seven years, nor is there any question that they held this possession under written evidence of title.

It is, however, contended for the Powell claimants that B. B. Bower, Sr., whose conduct in this sense would affect all the Bower claimants, was not a bona fide holder of the title without notice of the conflicting title of the Powells, but that he knew at the time he purchased that the latter had a claim of title, and, further, that in 1874 Bower had drawn the bill seeking to cancel their title, had conducted all the negotiations, and had written out the consent decree. It was further con-

178 F.—22

tended that he was an eminent lawyer, and therefore knew that the decree was void as to the Powells. In support of this contention there is cited the case of Hunt v. Dunn, 74 Ga. 123. In that case the Supreme Court of Georgia declared:

"It is unquestionably true that the written title on which a possession is based, to sustain a prescription, must be neither forged nor fraudulent, if 'notice' of the fraud or forgery 'be brought home to the claimant before or at the commencement of his possession.' * * * The section of our Code under consideration was designed to protect a possession held under a title acquired in good faith, and not one taken in disregard of the rights of another person of whose title the claimant had been informed, and about which, with proper inquiry, he might have had full knowledge, if he had made the requisite effort to inform himself."

Now, it was not contended by the Powell claimants that B. B. Bower, Sr., had been guilty of any moral fraud. It is insisted, however, that he is responsible for legal fraud in that he knew of the Powell title, and also knew or ought to have known that the decree attempting to cancel that title was void in law. B. B. Bower, Sr., testified that he had no idea at the time he bought the property that the Powells had any rights at all in it, that he believed firmly then, and believes now "that their rights were all eliminated by the decree."

While full weight may well be given to this testimony of Judge Bower, a more complete answer to the contention of the Powell claimants seems to be found in the case of Lee v. Ogden, 83 Ga. 325, 10 S. E. 349, decided subsequently to Hunt v. Dunn, supra. In the later case the Supreme Court observed as follows:

"Counsel for the plaintiff in error relied on the case of Hunt v. Dunn, 74 Ga. 120. That case seems to be in direct conflict with the uniform rulings of this court. See the cases cited in Ware v. Barlow, supra [81 Ga. 1, 6 S. E. 465]. It does not cite these cases, nor overrule them, and we are disposed to follow the earlier cases, and those made since the decision in 74 Ga. If the doctrine announced in 74 Ga. be correct, there is no use for the doctrine of prescription. * * * When the doctrine of prescription is involved in a suit in ejectment, good faith is one of the main elements in the case; and, as we have uniformly held, mere notice of an outstanding title is not evidence of bad faith. Good faith is not inconsistent with such notice. If a person buys land in good faith, believing he is obtaining a good title, and enters into possession thereof, and remains there continuously, uninterruptedly, peaceably, etc., for seven years, that possession ripens into a good title, whether the title he purchased originally was good or not. The very object of the doctrine of prescription is to make a bad title good when the necessary requisites have been complied with. Of course, if a person purchases land in bad faith, knowing that the title he purchases is fraudulent, it can never ripen into a good title. * * *"

The court then observes:

"While we cannot overrule the case of Hunt v. Dunn, supra, one of our associates being providentially absent, and no request having been made to us to review it, we express our decided disapprobation of the doctrine announced therein."

It seems clear enough from this quotation that but for providential interference Hunt v. Dunn would have been reversed, and that, in any event, it has been left by Georgia's supreme appellate tribunal in a wholly discredited status.

In a more recent case the Supreme Court of the state has contributed to the jurisprudence of the country a discussion of such

fraud, moral and legal, as will vitiate a legal title. The conclusion seems to be final, and, as it affects the title to real estate in Georgia, is, of course, conclusive on this court. The case is Bower v. Cohen, 126 Ga. 35, 54 S. E. 918, and was decided in 1906. The doctrine there announced is as follows:

"If the prescriber claims under color, and the writing is forged or fraudulent, and he has notice of the same before or at the time of the commencement of the possession, no prescription can be based thereon. Civ. Code [1895] §§ 3584, 3589. The fraud contemplated by these provisions of the law is not mere legal fraud. It is that class of fraud denominated moral fraud. That is, there must be something in the transaction which charges the conscience of the prescriber. Wingfield v. Virgin, 51 Ga. 143; Ware v. Barlow, 81 Ga. 1 16 S. E. 465]; Ellis v. Dasher, 101 Ga. 8 [29 S. E. 268]; Street v. Collier, 118 Ga. 470 [45 S. E. 294]. An honest mistake of law as to the effect of the writing cannot, of course, amount to a moral fraud as against the true owner. In the present case, a lot of land partly improved and partly unimproved was sold at a tax sale in 1884, as unreturned wild land. This sale was void. Brown v. Powell, 85 Ga. 603 [11 S. E. 866]; Hutchins v. Tenant, 73 Ga. 95; Southern Bank & Trust Co. v. Wilcox Lumber Co., 119 Ga. 519 [46 S. E. 668]. The plaintiff was the purchaser at the sale. At the time he bought it was an open question as to whether the sale of improved land under a proceeding by a tax collector describing it as wild land was valid. In Gardner v. Donalson, 80 Ga. 71 [7 S. E. 163], Mr. Chief Justice Bleckley said that there was doubt as to whether such a sale would be invalid. When the plaintiff bought in 1884 under the belief that he obtained a good title, he made a mistake as to the law. Certainly he is not to be charged with bad faith or moral obliquity because he decided the doubtful legal question in the wrong way. When he took the sheriff's deed and went into possession of the land, the law presumed that he bought in good faith, and it was incumbent upon those who attacked his claim of title to overcome this presumption. In order to overcome it, it must appear by a preponderance of evidence that the transaction, so far as his connection with it was concerned, was tainted with moral fraud; that is, that there was a covinous intention in procuring the deed. Lee v. Ogden, 83 Ga. 329 [10 S. E. 349]. If when he went into possession he believed that he acquired title to the property, the fact that he made a mistake as to the law could not make him guilty of moral fraud."

This statement of the law of Georgia, affording as it does a rule defining the essential requisites of title to real estate, is constraining on this court. It is not in that class of questions about which the courts of the United States may form an independent judgment.

Since it is conceded that the burden is upon the Powells to show that Judge Bower's connection with the title was tainted with moral fraud, and since nothing has been offered to rebut the direct and positive statement of that experienced practitioner and jurist that he believed his title was good at the time he purchased it, and went into possession, his testimony must be held conclusive upon this point.

It is insisted that Judge Bower ought to have known that the decree was void. This is by no means clear; and, after considering all of the facts adduced, is it clear that the decree was void? During all the years in which the Bower claimants have been in continuous, uninterrupted, open, notorious, and peaceable possession and use of the property, with written evidence of title of the most formal character, none of the Powell claimants were under any legal disability to insist upon their alleged rights. They paid none of the burdens imposed by the state, county, or municipal governments upon the land. All of

these were assumed and paid by the Bowers. "Vigilantibus non dormientibus leges subveniunt."

It seems that the dormant claim of these Powell claimants who came somewhat irregularly into the world (which irregularity under the law of Georgia could not possibly have been corrected) would have remained quiescent but for the fact that the lot in days long gone desecrated by a livery stable, but afterwards redeemed by the erection thereon of a structure devoted by Judge Bower to the law, and to the lucubrationes viginti annorum of his lawyer sons, had at last been selected by a grateful country as a site for the public building dedicated to the service of a county named for its bright naval hero, Decatur, and of a city whose patriotic forefathers immortalized it with another name glorious in the annals of our sea power, Bainbridge.